| | |
|---|---|
| **SHARDE HARVEY DDS PLLC**<br><br>**Plaintiff,**<br><br>vs.<br><br>**THE HARTFORD FINANCIAL SERVICES GROUP INC. and SENTINEL INSURANCE COMPANY LTD**<br><br>**Defendants.** | **COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff, Sharde Harvey DDS PLLC ("Plaintiff" or "Harvey") brings this Complaint, alleging relief against Defendants The Hartford Financial Services Group Inc. ("Hartford") and Sentinel Insurance Company Ltd.("Sentinel") and avers as follows:

## I. NATURE OF THE CASE

1. This is a civil action seeking declaratory relief arising from Plaintiff's contract of insurance with the Defendants.

2. In light of the Coronavirus global pandemic and state and local orders mandating that all non-essential in store businesses must shut down on March 20, 2020, Plaintiff's dental office has suffered business loss. Because of the shutdown, Plaintiff only performs emergency services for patients as opposed to preventive dental care as needed but not more than once a week or once every two weeks.

3. Plaintiff's insurance policies provide coverage for all non-excluded business losses, and thus provide coverage here.

4. As a result, Plaintiff is entitled to declaratory relief that its business is covered for all business losses that have been incurred in an amount greater than $200,000.00 (or $100,000 a

1

month gross income).

## II. **JURISDICTION**

5. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332, because there is complete diversity of citizenship between Plaintiff and the Defendants. Further, Plaintiff has suffered business losses in an amount greater than $200,000.00. The amount in controversy necessary for diversity jurisdiction over a declaratory judgment action is measured by the value of those business losses. *Id.* at § 1332(a).

6. This Court has personal jurisdiction over Defendants, Hartford and Sentinel. At all relevant times Defendants have engaged in substantial business activities in the State of New York. At all relevant times Defendants transacted, solicited, and conducted business in New York through its employees, agents, and/or sales representatives, and derived substantial revenue from such business in New York. Defendants purposefully availed itself of personal jurisdiction in New York because it contracted to provide insurance to Plaintiff in New York which is the subject of this case.

7. Venue is proper in this district pursuant to 28 U.S.C. § 1391(c) because Defendants are corporations that have substantial, systematic, and continuous contacts in New York and within the Southern District of New York. Further, the insurance sold to Plaintiff which is the subject of this case was sold in the Southern District of New York.

## III. **PARTIES**

8. At all relevant times, Plaintiff, Harvey is authorized to do business the State of New York. Harvey owns, operates, manages, and/or controls a dentist office located at 121 E. 60th Street Apartment 1B New York, New York 10022.

9. Defendant, Hartford is an insurance carrier who provides business interruption insurance to Plaintiff. Hartford is headquartered at 1 Hartford Plaza, Hartford, Connecticut 06155.

10. Defendant, Sentinel underwrote the insurance provided to Plaintiff and is headquartered at 1Hartford Plaza Hartford Connecticut 06155.

11. At all relevant times, Defendants issued a policy to Harvey to cover business interruption loss from December 16, 2019 until December 16, 2020. The policy number is 10 SBA VP 9803. This policy was intended to cover losses to business interruption. See Declaration attached hereto as Exhibit 1.

12. The policy is currently in full affect in providing, among other things, personal property, business income and extra expense, contamination coverage and additional coverage.

13. Plaintiff, Harvey submitted a claim for a date of loss of March 7, 2020 pursuant to its policy seeking coverage under this policy. Defendants rejected Plaintiff's claim for coverage for business loss and business interruption and other claims, contending, *inter alia,* that Plaintiff did not suffer physical damage to its property directly and stating other reasons why Plaintiff purportedly is not entitled to coverage for the losses and damages claimed.

## IV. **FACTUAL BACKGROUND**

**A.** **Insurance Coverage**

14. Plaintiffs faithfully paid policy premiums to Defendants, specifically to provide, among other things, additional coverages in the event of business interruption or closures by order of Civil Authority and for business loss for property damage.

15. Under the Policy, insurance is extended to apply to the actual loss of business income sustained and the actual, necessary and reasonable extra expenses incurred when access to the Insured Properties is specifically prohibited by order of civil authority as the direct result of a covered cause of loss to property in the immediate area of Plaintiffs' Insured Properties. This additional coverage is identified as coverage under "Civil Authority."

16. The Policy is an all-risk policy, insofar as it provides that covered causes of loss under the policy means coverage for all covered losses, including but not limited to direct physical loss or direct physical damage, unless the loss is specifically excluded or limited in the Policy.

17. The Policy also covers for damages resulting from business interruption when there is property damage.

18. Based on information and belief, the Defendants have accepted the policy premiums with no intention of providing any coverage for business losses or the Civil Authority extension due to a loss and shutdown and property damage.

**B.    The Coronavirus Pandemic**

19. The scientific community, and those personally affected by the virus, recognize the Coronavirus as a cause of real physical loss and damage. It is clear that contamination of the Insured Properties would be a direct physical loss requiring remediation to clean the surfaces of the dental practice.

20. The virus that causes COVID-19 remains stable and transmittable in aerosols for up to three hours, up to four hours on copper, up to 24 hours on cardboard and up to two to three days on plastic and stainless steel. *See* https://www.nih.gov/news-events/news-releases/new-coronavirus-stable-hours-surfaces (last visited April 9, 2020).

21. The CDC has issued a guidance that gatherings of more than 10 people must not occur. People in congregate environments, which are places where people live, eat, and sleep in close proximity, face increased danger of contracting COVID-19.

22. The global Coronavirus pandemic is exacerbated by the fact that the deadly virus physically infects and stays on surfaces of objects or materials, "fomites," for up to twenty-eight (28) days.

23. China, Italy, France, and Spain have implemented the cleaning and fumigating of

public areas prior to allowing them to re-open publicly due to the intrusion of microbials.

**C.     Civil Authority**

24.     On March 7, 2020 Governor Cuomo declared a State of disaster Emergency for the entire state of New York as a result of COVID-19.

25.     On March 12, 2020, Governor Cuomo set restrictions on large gatherings.

26.     On March 20, 2020, the State of New York issued a stay at home order that all non-essential workers must stay at home as a result of COVID-19. This order has been extended to at least May 15,2020.

27.     On April 17, 2020 the State of New York ordered all individuals over the age of two to wear face covering when in a public place.

28.     Plaintiff's dental practice is unable to operate due to the stay-at-home orders for public safety issued by the Governor of New York and the State of New York generally, and have submitted a claim to its insurance carrier related to such losses. Plaintiff's dental office may only perform emergency dental care but not routine dental care.

29.     Further, on April 10, 2020 President Trump seemed to support insurance coverage for business loss like that suffered by the Plaintiffs.

> REPORTER: Mr. President may I ask you about credit and debt as well. Many American individuals, families, have had to tap their credit cards during this period of time. And businesses have had to draw down their credit lines. Are you concerned Mr. President that that may hobble the U.S. economy, all of that debt number one? And number two, would you suggest to credit card companies to reduce their fees during this time?
>
> PRESIDENT TRUMP: Well it's something that we've already suggested, we're talking to them. ***Business interruption insurance***, I'd like to see these insurance companies—you know you have people that have paid. When I was in private I had business interruption. When my business was interrupted through a hurricane or whatever it may be, I'd have business where I had it, I didn't always have it, sometimes I had it, sometimes, I had a lot of different

companies. *But if I had it I'd expect to be paid*. You have people.I speak mostly to the restaurateurs, where they have a restaurant, they've been paying for 25, 30, 35 years, business interruption. They've never needed it. All of a sudden they need it. And I'm very good at reading language. I did very well in these subjects, OK. And I don't see the word pandemic mentioned. Now in some cases it is, it's an exclusion. But in a lot of cases I don't see it. I don't see it referenced. And they don't want to pay up. I would like to see the insurance companies pay if they need to pay, if it's fair. And they know what's fair, and I know what's fair, I can tell you very quickly. But business interruption insurance, that's getting a lot money to a lot of people. And they've been paying for years, sometimes they just started paying, but you have people that have never asked for business interruption insurance, and they've been paying a lot of money for a lot of years for the privilege of having it, and then when they finally need it, the insurance company says 'we're not going to give it.' We can't let that happen.

https://youtu.be/_cMeG5C9TjU (last visited on April 17, 2020) (emphasis added).

30. The President is articulating a few core points:

    a. Business interruption is a common type of insurance.

    b. Businesses pay in premiums for this coverage and should reasonably expect they'll receive the benefit of the coverage.

    c. This pandemic should be covered unless there is a specific exclusion for pandemics.

    d. If insurers deny coverage, they would be acting in bad faith.

31. These Orders and proclamations, as they relate to the closure of all "non-life-sustaining businesses," evidence an awareness on the part of both state and local governments that COVID-19 causes damage to property. This is particularly true in places where business is conducted, such as Plaintiff's, as the requisite contact and interaction causes a heightened risk of the property becoming contaminated.

**D.** **Impact on Plaintiff**

32. As a result of the Orders referenced herein, Plaintiff shut its doors to dental patients who are not receiving emergency care.

6

33. Plaintiff's business loss occurred when the State of New York declared a State of Emergency on March 7, 2020. It suffered further when the State of New York required all non-essential businesses to shut down on March 20,2020.

34. Prior to March 7, 2020, Plaintiff was opened to patients for all dental needs. Plaintiff's dental practice is not a closed environment, and because people – staff, patients, community members, and others – constantly cycle in and out of the dental practice offices/suite, there is an ever-present risk that the Insured Property is contaminated and would continue to be contaminated. In fact, Plaintiff's dental practice suffered contamination based on patients being later diagnosed as suffering from the Coronavirus (Covid-19).

35. Businesses like the Plaintiff's dental practice are more susceptible to being or becoming contaminated, as both respiratory droplets and fomites are more likely to be retained on the Insured Property and remain viable for far longer as compared to a facility with open-air ventilation.

36. Plaintiff's business is also highly susceptible to rapid person-to-property transmission of the virus, and vice-versa, because the service nature of the business places staff and patients in close proximity to the property and to one another and because the nature of a dental practice involves a high level of respiratory droplets and fomites being released into the air of the property during dental procedures and contacting dental equipment.

37. The virus is physically impacting Plaintiff. Any effort by the Defendants to deny the reality that the virus causes physical loss and damage would constitute a false and potentially fraudulent misrepresentation that could endanger the Plaintiff and the public. Dental equipment in the practice as well as other property in the practice has been impacted by exposure to the Covid-19 virus.

38. A declaratory judgment determining that the coverage provided under the Policy

exists and is necessary so as to prevent the Plaintiff from being left without vital coverage acquired to ensure the survival of the dental practice due to the shutdown caused by the civil authorities' response. As a result of these Orders, Plaintiff has incurred, and continues to incur, among other things, a substantial loss of business income and additional expenses covered under the Policy.

## V. CAUSE OF ACTION
## DECLARATORY RELIEF

39. Plaintiff re-alleges and incorporate by reference into this cause of action each and every allegation set forth in each and every paragraph of this Complaint.

40. The Declaratory Judgment Act, 28 U.S.C. § 2201(a), provides that in "a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a).

41. An actual controversy has arisen between Plaintiff and the Defendants as to the rights, duties, responsibilities and obligations of the parties under the Policy in that Plaintiff contends and, on information and belief, the Defendants disputes and denies that:

    a. The Orders constitute a prohibition of access to Plaintiff's Insured Property;

    b. The prohibition of access by the Orders has specifically prohibited access as defined in the Policy;

    c. The Policy's Exclusion of Loss Due to Virus or Bacteria does not apply to the business losses incurred by Plaintiff here.

    d. The Orders trigger coverage;

    e. The Policy provides coverage to Plaintiff for any current and future civil authority closures of business in New York due to physical loss\or damage directly or indirectly from the Coronavirus under the Civil Authority coverage parameters;

    f. The Policy provides business income coverage in the event that Coronavirus has directly or indirectly caused a loss or damage at the insured premises or immediate area of the Insured Properties; and

    g. Resolution of the duties, responsibilities and obligation of the parties is

necessary as no adequate remedy at law exists and a declaration of the Court is needed to resolve the dispute and controversy.

42. Plaintiff seeks a Declaratory Judgement to determine whether the Orders constitute a prohibition of access to Plaintiff's Insured Property as Civil Authority as defined in the Policy.

43. Plaintiff further seeks a Declaratory Judgement to affirm that the Order triggers coverage.

44. Plaintiff further seeks a Declaratory Judgment to affirm that the Policy provides coverage to Plaintiff for any current and future Civil Authority closures of businesses in the State of New York due to physical loss or damage from the Coronavirus and the policy provides business income coverage in the event that Coronavirus has caused a loss or damage at the Insured Property.

## VI. PRAYER FOR RELIEF

WHEREFORE, Plaintiff herein prays as follows:

1) For a declaration that the Orders constitute a prohibition of access to Plaintiff's Insured Property.

2) For a declaration that the prohibition of access by the Orders is specifically prohibited access as defined in the Policy.

3) For a declaration that the Orders trigger coverage under the Policy.

4) For a declaration that the Policy provides coverage to Plaintiffs for any current, future and continued civil authority closures of businesses in New York due to physical loss or damage directly or indirectly from the Coronavirus under the Civil Authority coverage parameters.

5) For a declaration that the Policy provides business income coverage in the event that Coronavirus has directly or indirectly caused a loss or damage at the Plaintiffs' Insured Properties or the immediate area of the Plaintiff's Insured Property.

6) For such other relief as the Court may deem proper.

**TRIAL BY JURY IS DEMANDED**

Dated: April 27, 2020

Respectfully submitted,

*/s/ Jeffrey L. Koenig*
Jeffrey L. Koenig, Esq.
**HECHT, KLEEGER & DAMASHEK, PC**
19 West 44th Street
Suite 1500
New York, New York 10036
Telephone: (212) 490-5700
Facsimile: (212) 490-4800
koenig@lawyer1.com

Arnold Levin, Esq.
Laurence Berman, Esq.
Frederick Longer, Esq.
Daniel Levin, Esq.
**LEVIN SEDRAN & BERMAN LLP**
510 Walnut Street, Suite 500
Philadelphia, PA 19106-3697
Telephone: (215) 592-1500
Facsimile: (215) 592-4663
alevin@lfsblaw.com
flonger@lfsblaw.com
dlevin@lfsblaw.com

Richard M. Golomb, Esq.
Kenneth J. Grunfeld, Esq.
**GOLOMB & HONIK, P.C.**
1835 Market Street, Suite 2900
Philadelphia, PA 19103
Telephone: (215) 985-9177
Facsimile: (215) 985-4169
rgolomb@golombhonik.com
kgrunfeld@golombhonik.com

Aaron Rihn, Esq.
**ROBERT PIERCE & ASSOCIATES**
707 Grant Street, Suite 125
Pittsburgh, PA 15219
Telephone: (412) 281-7229
Facsimile: (412) 281-4229

W. Daniel "Dee" Miles, III
Rachel N. Boyd
Paul W. Evans
**BEASLEY, ALLEN, CROW, METHVIN,**
**PORTIS & MILES, P.C.**
P.O. Box 4160
Montgomery, Alabama 36103
Telephone: (334) 269-2343
Facsimile: (334) 954-7555

*Counsel for Plaintiffs*