USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 3/18/2021

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
SHARDE HARVEY, DDS, PLLC,            :
                                    :        20-CV-3350 (PGG) (RWL)
                  Plaintiff,        :
                                    :
        - against -                 :    **REPORT AND RECOMMENDATION**
                                    :    **TO HON. PAUL G. GARDEPHE:**
SENTINEL INSURANCE COMPANY, LTD.,   :    **<u>MOTION TO DISMISS</u>**
                                    :
                  Defendant.        :
------------------------------------------------------------X

**ROBERT W. LEHRBURGER, United States Magistrate Judge.**

Plaintiff Sharde Harvey, DDS, PLLC is a dental practice that carried business income insurance underwritten by Defendant Sentinel Insurance Company, Ltd.  As a result of the COVID-19 pandemic and related government shutdown orders, Sharde Harvey was forced to curtail its regular business operations, resulting in lost revenue.  Sharde Harvey filed an insurance claim, which Sentinel denied.  Sharde Harvey then filed this action seeking a declaration that its losses are covered under the "Business Income," "Extra Expense," and "Civil Authority" provisions of its policy.  Sentinel has moved to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  As explained below, the terms of the policy do not cover Sharde Harvey's losses.  Accordingly, I recommend that Sentinel's motion be GRANTED.

**Background**

**A.    The Insurance Policy**

Sharde Harvey is a dental practice located in New York City.  (Compl. ¶¶ 2, 20.[1])  Sentinel is an insurance company headquartered in Hartford, Connecticut.[2]  (Compl.

---

[1] "Compl." refers to Sharde Harvey's "Third Amended Complaint," the currently operative complaint, filed on September 18, 2020 (Dkt. 35).

¶ 21.)  Sentinel issued Sharde Harvey the insurance policy at issue, covering the period of time from December 16, 2019, to December 16, 2020.  (Compl. ¶ 22.)  As relevant here, the policy provides:

> **Business Income**: "[Sentinel] will pay for the actual loss of Business Income [Sharde Harvey] sustain[s] due to the necessary suspension of [Sharde Harvey's] 'operations' during the 'period of restoration.'  The suspension must be caused by direct physical loss of or physical damage to property at the 'scheduled premises' … caused by or resulting from a Covered Cause of Loss."  (Policy at 42, § A.5.o.(1).[3])
>
>> **"Suspension"** is defined as "[t]he partial slowdown or complete cessation of [Sharde Harvey's] business activities; or [t]hat part or all of the 'scheduled premises' is rendered untentantable as a result of a Covered Cause of Loss if coverage for Business Income applies to the policy."  (Policy at 42, § A.5.o.(5).)
>>
>> **"Operations"** is defined as "[Sharde Harvey's] business activities occurring at the 'scheduled premises' and tenantability of the 'scheduled premises.'"  (Policy at 56, § G.11.)
>>
>> **"Period of Restoration"** is defined as "the period of time that … [b]egins with the date of direct physical loss or physical damage caused by or resulting from a Covered Cause of Loss at the 'scheduled premises,' and [e]nds on the date when [t]he property at the 'scheduled premises' should be repaired, rebuilt or replaced with reasonable speed and similar quality."  (Policy at 56, § G.12.)
>>
>> **"Covered Cause[ ] of Loss"** is defined as "RISKS OF DIRECT PHYSICAL LOSS" subject to certain exclusions and limitations not applicable here.  (Policy at 34, § A.3.)

---

[2] In its first two complaints, Sharde Harvey also named as a defendant Sentinel's parent company, The Hartford Financial Services Group, Inc.  (Dkts. 1, 14.)  The Hartford was not a party to the insurance contract and has been removed from the case.  (*See* Dkts. 17, 26, 35.)

[3] "Policy" refers to the insurance policy at issue in this case, which encompasses several separate documents (Dkt. 39-1).  The numbers used to pin cite pages of the policy refer to the pages' location in the ECF filing, not the internal pagination of the individual documents comprising the policy.

**Extra Expense**: "[Sentinel] will pay reasonable and necessary Extra Expense [Sharde Harvey] incur[s] during the 'period of restoration' that [Sharde Harvey] would not have incurred if there had been no direct physical loss or physical damage to property at the 'scheduled premises' … caused by or resulting from a Covered Cause of Loss."  (Policy at 42, § A.5.p.(1).)

> **"Extra Expense"** is defined as "expense incurred … [t]o avoid or minimize the suspension of business and to continue 'operations.'"  (Policy at 42, § A.5.p.(3).)

**Civil Authority**: "This insurance is extended to apply to the actual loss of Business Income [Sharde Harvey] sustain[s] when access to [its] 'scheduled premises' is specifically prohibited by order of a civil authority as the direct result of a Covered Cause of Loss to property in the immediate area of [its] 'scheduled premises.'"  (Policy at 43, § A.5.q.(1).)

## B.   The Business Interruption

On March 7, 2020, as a result of the coronavirus pandemic, New York Governor Andrew Cuomo declared a State of Emergency and issued a stay-at-home order. (Compl. ¶ 67.)  Around that same time, the CDC issued guidelines on best practices for limiting the spread of COVID-19, which included minimizing the amount of time spent indoors with other people, social distancing, and cleaning and disinfecting surfaces, on which COVID-19 could survive for up to three days.  (Compl. ¶¶ 52-62.)

Although it does not specify when, Sharde Harvey alleges that some of its patients contracted COVID-19, confirming the presence of the virus at its premises. (Compl. ¶ 80.)  Due to the presence of COVID-19, the government shutdown orders, the ongoing pandemic, and best practices for preventing the spread of the virus, Sharde Harvey ceased its regular business operations on March 20, 2020.  (Compl. ¶¶ 3, 50, 63, 76, 77, 82.)  The business was able to continue to perform emergency services once per week or every other week but was closed to the general public for non-emergency care such as cleanings and checkups.  (Compl. ¶¶ 9, 43, 77, 82.)  Because

Sharde Harvey generated most of its income from routine, preventative care, COVID-19 and the shutdown orders caused it to lose a significant amount of revenue.  (Compl. ¶¶ 9, 10, 50, 77, 82.)

On June 1, 2020, New York permitted dental offices to reopen, subject to state guidance for best practices in preventing the spread of COVID-19.  (Compl. ¶ 69.) Sharde Harvey resumed regular operations to some extent but followed CDC and American Dental Association guidelines for enhanced cleaning and sanitation, required everyone in the dental office to wear masks, and prioritized the most critical dental services.  (Compl. ¶ 83.)  Sharde Harvey alleges that its property is still contaminated by COVID-19 and characterizes its cleaning and sanitation protocols as an attempt to remedy physical damage to its property.  (Compl.  ¶ 85.)  Sharde Harvey also alleges that it is highly susceptible to contamination because of other contaminated premises in the surrounding area, but it does not specify any nearby premises that were contaminated.  (Compl. ¶ 86.)

## C.   The Insurance Claim and Present Lawsuit

At an unspecified time, Sharde Harvey submitted to Sentinel an insurance claim exceeding $150,000 for losses caused by the COVID-19 pandemic and New York's shutdown orders.  (Compl. ¶¶ 16, 17, 24.)  By letter dated April 14, 2020, Sentinel rejected Sharde Harvey's claim.  (Compl. ¶ 24.)  Sharde Harvey filed the instant action on April 29, 2020.  (Dkt. 1.)  After three amendments – two in response to proposed motions to dismiss – Sharde Harvey filed the currently operative complaint on September 18, 2020.  (Dkts. 14, 17, 19, 26, 27, 29, 35.)  Sharde Harvey seeks various declarations from the Court, all aimed at establishing that its losses are covered under

the Sentinel policy.  (Compl. ¶ 93 and at 21-22, Prayer for Relief.)  Most substantively, Sharde Harvey asks the Court to declare that: (1) that its losses were caused by "physical loss or damage" at its premises under the Business Income and Extra Expense provisions; and (2) that New York's shutdown orders constituted a specific prohibition on access to Sharde Harvey's property under the Civil Authority provision. (Compl. at 21-22, Prayer for Relief.)

Sentinel has moved to dismiss, contending that Sharde Harvey's losses are not covered under those provisions as a matter of law.  (Dkts. 37-39.)  After briefing was completed, the Honorable Paul G. Gardephe, U.S.D.J., referred the motion to the undersigned for Report and Recommendation.  (Dkt. 45.)  In addition to their formal briefing, the parties have submitted numerous compilations of supplemental authority as cases on these issues have been decided across the country.[4]  (Dkts. 43, 44, 46, 47, 48, 49.)

## Applicable Legal Standards

### A.    Rule 12(b)(6)

To survive a Rule 12(b)(6) motion, a complaint must plead "enough facts to state a claim to relief that is plausible on its face."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is facially plausible when the factual content pleaded allows a court "to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between

---

[4] Before this case was referred to the undersigned, Defendant also requested oral argument on its motion to dismiss.  (Dkt. 41.)  Pursuant to Section III(H) of this Court's individual rules, that request is denied as moot.

possibility and plausibility of "entitlement to relief."'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

In considering a motion to dismiss for failure to state a cause of action, a district court must "accept[ ] all factual claims in the complaint as true, and draw[ ] all reasonable inferences in the [non-moving party's] favor." *Lotes Co. v. Hon Hai Precision Industry Co.*, 753 F.3d 395, 403 (2d Cir. 2014) (internal quotation marks omitted). This tenet, however, is "inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Rather, the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level, … i.e., enough to make the claim plausible." *Arista Records LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) (internal quotation marks omitted). A complaint is properly dismissed where, as a matter of law, "the allegations in [the] complaint, however true, could not raise a claim of entitlement to relief." *Twombly*, 550 U.S. at 558.

When deciding a motion to dismiss pursuant to Rule 12(b)(6), a court generally is confined to the facts alleged in the complaint. *See Cortec Industries, Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991). A court may, however, consider additional materials, including documents attached to the complaint, documents incorporated into the complaint by reference, matters of which judicial notice may be taken, public records, and documents that the plaintiff either possessed or knew about, and relied upon, in bringing the suit. *See Kleinman v. Elan Corp.*, 706 F.3d 145, 152 (2d Cir. 2013). In that regard, if "a document relied on in the complaint contradicts allegations in the complaint, the document, not the allegations, control, and the court need not accept

6

the allegations in the complaint as true." *Poindexter v. EMI Record Group Inc.*, No. 11-CV-559, 2012 WL 1027639, at *2 (S.D.N.Y. March 27, 2012) (citing *Barnum v. Millbrook Care Limited Partnership*, 850 F. Supp. 1227, 1232-33 (S.D.N.Y. 1994)).  In insurance disputes in particular, courts may consider the insurance policies themselves, even if they are not attached to the plaintiff's complaint.   *Paraco Gas Corp. v. Travelers Casualty and Surety Co. of America*, 51 F. Supp. 3d 379, 388 n.3 (S.D.N.Y. 2014); *Svensson v. Securian Life Insurance Co.*, 706 F. Supp. 2d 521, 525 (S.D.N.Y. 2010).

## B.    Choice of Law

Sentinel asserts that New York law should apply in this case.  (Mem. at 6 n.2.[5]) Sharde Harvey does not dispute the point and applies New York law in its brief.  (*See* Opp. at 5 & n.4, 13 n.9, 14.[6])  That is sufficient to imply consent and establish that New York law applies.  *Arch Insurance Co. v. Precision Stone, Inc.*, 584 F.3d 33, 39 (2d Cir. 2009).  However, Sharde Harvey does not explicitly concede the point and relies on some cases that could be seen to conflict with New York law.  The Court thus makes it plain: New York Law applies to this contract dispute.

The Court has diversity jurisdiction in this case pursuant to 28 U.S.C § 1332, because the parties are citizens of different states and the amount in controversy exceeds $75,000.[7]  (Compl. ¶¶ 16, 20, 21.)  In diversity cases, federal courts apply the

---

[5] "Mem." refers to Sentinel's "Memorandum of Law in Support of Sentinel Insurance Company, Ltd.'s Motion to Dismiss" (Dkt. 38).

[6] "Opp." refers to "Plaintiff's Brief in Response to Defendant's Motion to Dismiss" (Dkt. 42).

[7] Sharde Harvey does not seek any monetary damages, only a declaratory judgment. The amount in controversy is thus based on how much monetary value would flow to Plaintiff as a result of the declaratory judgment.  *American Standard, Inc. v. Oakfabco,*

choice-of-law rules of the forum state.  *Maryland Casualty Co. v. Continental Casualty Co.*, 332 F.3d 145, 151 (2d Cir. 2003).   Here, that state is New York.   In contract disputes, New York applies the "center of gravity" approach, which requires courts to "apply the law of the place which has the most significant contacts with the matter in dispute."  *Id.* (internal quotation marks omitted).  Where the matter in dispute is the insurance policy of a New York entity covering property in New York, that place is New York.  *See Newman Myers Kreines Gross Harris, P.C. v. Great Northern Insurance Co.*, 17 F. Supp. 3d 323, 327 n.4 (S.D.N.Y. 2014).

In cases governed by New York law, as here, courts are bound to apply the law as interpreted by New York's intermediate appellate courts unless it finds persuasive evidence that the New York Court of Appeals would reach a different conclusion. *Pahuta v. Massey-Ferguson, Inc.*, 170 F.3d 125, 134 (2d Cir. 1999).

## C.   New York Contract Law

Under New York law, "a policyholder bears the burden of showing that the insurance contract covers the loss."   *Morgan Stanley Group Inc. v. New England Insurance Co.*, 225 F.3d 270, 276 (2d Cir. 2000) (collecting cases).   "The initial interpretation of a contract is a matter of law for the court to decide."  *Id.* at 275 (internal quotation marks and brackets omitted).  Courts should interpret a contract "to give effect to the intent of the parties as expressed in the clear language of the contract."  *Id.* (internal quotation marks omitted).

If provisions are ambiguous, courts must construe them against the insurer. *Dean v. Tower Insurance Co. of New York*, 19 N.Y.3d 704, 708, 955 N.Y.S.2d 817, 818

---

*Inc.*, 498 F. Supp. 2d 711, 717 (S.D.N.Y. 2007).  That amount is $150,000.  (Compl. ¶ 16.)

(2012).  But if provisions "are unambiguous and understandable, courts are to enforce them as written."  *Parks Real Estate Purchasing Group v. St. Paul Fire and Marine Insurance Co.*, 472 F.3d 33, 42 (2d Cir. 2006).  Additionally, a court must take care not to "make or vary the contract of insurance to accomplish its notions of abstract justice or moral obligation."  *Keyspan Gas East Corp. v. Munich Reinsurance America, Inc.*, 31 N.Y.3d 51, 63, 73 N.Y.S.3d 113, 120 (2018) (internal quotation marks omitted).

## Discussion

This dispute centers on the interpretation of the three provisions outlined above: Business Income, Extra Expense, and Civil Authority.  The Court will address each in turn.

### A.    Business Income

Under the Business Income provision, Sentinel agreed to pay for losses that Sharde Harvey sustained due to a necessary suspension or slowdown of its operations "caused by direct physical loss of or physical damage to property" at Sharde Harvey's premises.  (Policy at 42, § A.5.o.(1), (5) (defining suspension as partial slowdown or complete cessation).)  The parties do not dispute that Sharde Harvey suffered losses due to a necessary slowdown of its operations.  Their disagreement centers on whether the slowdown was "caused by direct physical loss of or physical damage to property" at Sharde Harvey's premises.  Sharde Harvey's Complaint intermittently alleges that its slowdown was "caused by" (1) the COVID-19 pandemic generally, (2) government shutdown orders, and (3) COVID-19 contamination in its own premises.  Sharde Harvey argues that those causes constitute "direct physical loss of or physical damage to property" or, at minimum, that the language is ambiguous and thus granting a motion to

dismiss would be inappropriate.  Sentinel argues that, under New York law, "direct physical loss of or physical damage to property" unambiguously does not encompass any of the alleged causes of Sharde Harvey's slowdown and thus the motion to dismiss should be granted.  Sharde Harvey is correct.

The Court's task is to determine whether the phrase "direct physical loss of or physical damage to property" unambiguously does not apply to the alleged causes of Sharde Harvey's slowdown.  In doing so, the Court does not write on a blank slate.  At least seven different New York courts (six since briefing was completed in this case) have interpreted identical or materially identical Business Income provisions in COVID-19 cases – four in this district, one in the Eastern District of New York, one in the Western District of New York, and one in the New York State Supreme Court, Orange County.[8]  *Food for Thought Caterers Corp. v. Sentinel Insurance Co., Ltd.*, No. 20-CV-3418, 2021 WL 860345, at *1 (S.D.N.Y. March 6, 2021) (Koeltl, J.); *Alexandre B. DeMoura, M.D. v. Continental Casualty Co.*, No 20-CV-2912, 2021 WL 848840, at *1 (E.D.N.Y. March 5, 2021) (Garaufis, J.); *10012 Holdings, Inc. v. Sentinel Insurance Co., Ltd.*, No. 20-CV-4471, 2020 WL 7360252, at *1 (S.D.N.Y. Dec. 15, 2020) (Schofield, J.); *Michael Cetta, Inc. v. Admiral Indemnity Co.*, No. 20-CV-4612, 2020 WL 7321405, at *1 (S.D.N.Y. Dec. 11, 2020) (Cronan, J.); *Social Life Magazine, Inc. v. Sentinel Insurance*

_____

[8] Another federal court in this District was faced with a similar Business Income provision in a COVID-19 case, but that case turned on a virus exclusion that is not at issue here.  *Michael J. Redenburg, Esq. PC v. Midvale Indemnity Co.*, No. 20-CV-5818, 2021 WL 276655, at *8 (S.D.N.Y. Jan. 27, 2021) (Engelmayer, J.).  Additionally, another New York State Supreme Court decision in a COVID-19 case involved a materially identical Business Income provision, but the court's interpretation of the provision under New York law was limited to relying on *10012 Holdings* and *Michael Cetta*.  *Soundview Cinemas Inc. v. Great American Insurance Group*, No. 605985/2020, 2021 WL 561854, at *9 (N.Y. Sup. Ct. Feb. 8, 2021).

*Co. Ltd.*, No. 20-CV-3311, 2020 WL 2904834 (S.D.N.Y. May 14, 2020) (Caproni, J.);[9]
*Tappo of Buffalo, LLC v. Erie Insurance Co.*, No. 20-CV-754, 2020 WL 7867553, at *1
(W.D.N.Y. Dec. 29, 2020) (Schroeder, Jr., J.);[10] *Visconti Bus Service, LLC v. Utica
National Insurance Group*, No. 5750/2020, 2021 WL 609851, at *2 (N.Y. Sup. Ct. Feb.
12, 2021) (Bartlett, J.).

Some of those decisions only addressed allegations that the plaintiffs' slowdowns
were caused by government shutdown orders and the effects of the COVID-19
pandemic generally.  *10012 Holdings*, 2020 WL 7360252 at *1-3; *Michael Cetta*, 2020
WL 7321405 at *1, *3, *11.  Others also addressed whether slowdowns caused by
COVID-19 on the premises would be covered.  *Food for Thought*, 2021 WL 860345 at
*1, *5; *Alexandre B. DeMoura,* 2021 WL 848840 at *4-6; *Social Life Magazine*, 2020 WL
2904834; *Tappo of Buffalo*, 2020 WL 7867553 at *2, *4; *Visconti Bus Service*, 2021 WL
609851 at *1, *10.

In all those cases, however, the courts found that plaintiffs' losses were not
covered by the Business Income provision and granted motions to dismiss.[11]  *Food for
Thought*, 2021 WL 860345 at *1, 5 (no coverage for catering service that suspended its
business operations to comply with government shutdown orders, even where plaintiff

---

[9] *Social Life Magazine* was a decision from the bench denying plaintiff's motion for a preliminary injunction requiring coverage.  The case was dropped before a written opinion could be issued.

[10] *Tappo of Buffalo* was a report and recommendation which the district judge never reviewed because the case was transferred to the Western District of Pennsylvania for consolidation of pretrial proceedings pursuant to 28 U.S.C. § 1407.  Conditional Transfer Order, *Tappo of Buffalo*, No. 20-CV-754, Dkt. 22.

[11] As noted, *Social Life Magazine* involved a motion for a preliminary injunction rather than a motion to dismiss.

alleged "likely presence of COVID-19 on its property"); *Alexandre B. DeMoura,* 2021 WL 848840 at *4-6 (no coverage for medical office that suspended operations due to government shutdown orders and ever-present risk of contamination); *10012 Holdings*, 2020 WL 7360252 at *1-3 (no coverage for art gallery that suspended its business operations in accordance with government shutdown orders); *Michael Cetta*, 2020 WL 7321405 at *1, *3, *11 (no coverage for restaurant that closed due to COVID-19 outbreak and government shutdown orders); *Social Life Magazine*, 2020 WL 2904834 (no preliminary injunction requiring coverage for printing press that closed due to COVID-19 pandemic, shutdown orders, and alleged damage to facility by COVID-19); *Tappo of Buffalo*, 2020 WL 7867553 at *2, *4 (no coverage for restaurant alleging that presence of COVID-19 caused suspension of its operations); *Visconti Bus Service*, 2021 WL 609851 at *1, *10 (no coverage for bus contractor that suffered business interruption due to government shutdown orders even if COVID-19 were found on the premises).

The reason for that consistent outcome is clear.  Under New York law, it is unambiguous that (1) "loss of" property does not encompass "loss of use" of that property; and (2) insurance provisions that cover business interruption "caused by direct physical loss of or physical damage to property" provide coverage "only where the insured's property suffers direct physical damage."  *Food for Thought*, 2021 WL 860345 at *3 (internal quotation marks and brackets omitted); *see also Alexandre B. DeMoura,* 2021 WL 848840 at *4-6 (finding both propositions established under New York law); *10012 Holdings*, 2020 WL 7360252 at *2-3 (same); *Michael Cetta*, 2020 WL 7321405 at *7 (same); *Tappo of Buffalo*, 2020 WL 7867553 at *3-4 (same); *Visconti Bus Service*,

2021 WL 609851 at *4 (same); *Social Life Magazine*, 2020 WL 2904834 ("New York law is clear that this kind of business interruption needs some damage to the property"). The COVID-19 pandemic and shutdown orders may have created a "loss of use" of property, but – as explained in greater detail below – they did not cause "physical damage to property," requiring dismissal here.

Both of those propositions – that "loss of" does not encompass "loss of use" and that "direct physical loss of or physical damage to" requires "physical damage to property – were articulated in *Roundabout Theater Co. v. Continental Casualty Co.*, 302 A.D.2d 1, 6-8, 751 N.Y.S.2d 4, 8 (1st Dep't 2002), which *Visconti Bus Service* called "the seminal New York state authority" on those issues.  2021 WL 609851 at *4.  In *Roundabout Theater* case, the Roundabout Theater Company had to cancel thirty-five performances because New York City closed 43rd Street between Broadway and 6th Avenue due to a nearby construction accident.  *Roundabout Theater*, 302 A.D.2d at 3, 751 N.Y.S.2d at 5.  Roundabout sought reimbursement for losses caused by the "loss of use" of the theater under the business interruption clause of its insurance policy.  *Id.* at 5, 751 N.Y.S.2d at 6.  The business interruption clause covered "loss of, damage to, or destruction of property or facilities … caused by the perils insured against," and defined perils as "all risks of direct physical loss or damage to the property."  *Id.* at 3, 751 N.Y.S.2d at 5.  The New York Appellate Division held that that language "clearly and unambiguously provide[d] coverage only where the insured's property suffers direct physical damage."  *Id.* at 6, 751 N.Y.S.2d at 8.

Since *Roundtree Theater*, courts applying New York law have consistently concluded that insurance provisions with nearly identical language to the Business

Income provision at issue in this case are triggered only where there is physical damage to covered property.  *Newman Myers*, 17 F. Supp. 3d at 331 ("'direct physical loss or damage' … unambiguously[ ] requires some form of actual, physical damage to the insured premises to trigger loss of business income and extra expense coverage" and does not encompass "loss of use of a premises[ ] where there has been no physical damage to such premises"); *United Airlines, Inc. v. Insurance Company of the State of Pennsylvania*, 385 F. Supp. 2d 343, 349 (S.D.N.Y. 2005) ("The inclusion of the modifier 'physical' before 'damages' … supports [defendant's] position that physical damage is required before business interruption insurance coverage is paid"), *aff'd*, 439 F.3d 128 (2d Cir. 2006); *Philadelphia Parking Authority v. Federal Insurance Co.*, 385 F. Supp. 2d 280, 288 (S.D.N.Y. 2005) (the phrase "direct physical loss or damage" requires that "the interruption in business must be caused by some physical problem with the covered property").

From *Roundabout Theater* to the current COVID-19 cases, courts have also noted that provisions related to the Business Income provision further support the proposition that "direct physical loss of or physical damage to property" requires injury to the property.  For example, the Business Income provision here cabins the period of covered business interruption to the time when the property is "repaired, rebuilt or replaced."  (Policy at 56, § G.12 ("Period of Restoration" definition).)  Nearly identical temporal limits were at issue in *Roundabout Theater*, *Newman Myers*, and the other New York COVID-19 cases, and courts have consistently found that the words rebuild, repair, and replace "contemplate physical damage to the insured premises as opposed to loss of use of it."  *Newman Myers*, 17 F. Supp. 3d 323, 332 (collecting cases,

including *Roundabout Theater* and *Philadelphia Parking Authority*); *Michael Cetta*, 2020 WL 7321405 at *6 ("The idea that the premises will be 'repaired, rebuilt or replaced' suggests the occurrence of material harm that then requires a physical fix").

Sharde Harvey has not pointed to any New York case that reached a contrary conclusion about language similar to "direct physical loss of or physical damage to property," or any split from *Roundabout Theater* in the New York Appellate Division. Instead, Sharde Harvey argues that, on a textual level, requiring "physical damage to property" to satisfy "physical loss of or physical damage to property" conflates "loss of" and "damage to," which must be considered independently; and that when they are considered independently, Sharde Harvey has suffered a "loss of" its property.  (Opp. at 5, 11-15.)

In making that argument, Sharde Harvey does not squarely argue that *Roundabout Theater* was wrongly decided, as some other similarly situated plaintiffs have done.  *See Food for Thought*, 2021 WL 860345 at *4; *Michael Cetta*, 2020 WL 7321405 at *8.  Instead, Sharde Harvey mentions *Roundabout Theater* and its progeny of New York cases only in a footnote and attempts to limit its holding to be that allegations of property damage to adjacent properties did not constitute "covered perils" under the policy at issue in that case.  (Opp. at 11 n.7.)  That argument ignores the clear holding of *Roundabout Theater*: that under substantially identical language to the language at issue here, "business interruption coverage is limited to losses involving physical damage to the insured's property."  *Roundabout Theatre*, 302 A.D.2d at 7, 751 N.Y.S.2d at 8; *accord 10012 Holdings*, 2020 WL 7360252 at *2.

Possibly realizing that a direct attack on *Roundabout Theater* would be futile in this case that is governed by New York law, Sharde Harde focuses on out-of-jurisdiction cases that have reached the same conclusion as *Roundabout Theater*, and argues that those cases ignore the distinction between "loss of" and "damage to." (Opp. at 5, 12-14.) Sharde Harde overlooks, however, the fact that *Roundabout Theater* directly addressed the distinction between "loss of" and "damage to." In *Roundabout Theater*, the Appellate Division confronted a lower court's conclusion "that the phrase 'loss of' must include 'loss of use of,' because otherwise 'loss of' would be redundant to 'destruction of.'" *Roundabout Theatre*, 302 A.D.2d at 7, 751 N.Y.S.2d at 8. The court observed that "loss of" could encompass "theft or misplacement." *Id.*, 751 N.Y.S.2d at 8. As Judge Cronan noted in *Michael Cetta*, "loss of" could also encompass complete destruction of property, "whereas 'damage' contemplates a lesser injury." 2020 WL 7321405 at *9. Judge Cronan explained that those definitions of "loss of" are consistent with *Roundabout Theater*'s primary holding – that some physical damage to property is required to trigger business interruption insurance – because "direct physical loss of or damage to" clearly connotes "a negative alteration in the tangible condition of property." 2020 WL 7321405 at *6-9.

The requirement of some "physical damage to property" to satisfy "direct physical loss of or damage to property" is fatal to Sharde Harvey's position that its losses are covered under the Business Income provision. That is true regardless of the alleged "cause" of Sharde Harvey's slowdown – (1) the COVID-19 pandemic generally, (2) the government shutdown orders, or (3) COVID-19 contamination in its own premises.

16

First, the COVID-19 pandemic, as a general matter, did not "physically damage" Sharde Harvey's property.  *See, e.g.*, *Alexandre B. DeMoura,* 2021 WL 848840 at *4-6 (plaintiff suspended operations due to ever-present risk of contamination and court found that it failed to allege "actual, tangible harm to the property"); *Michael Cetta*, 2020 WL 7321405 at *1, *3, *11 (plaintiff suspended operations due to COVID-19 and government shutdown orders and court found that "[n]one of the facts pleaded in the Complaint suggest that the suspension in [plaintiff]'s operation was 'caused by direct physical loss of or damage to property'").

Second, the government shutdown orders did not "physically damage" Sharde Harvey's property.  *See, e.g.*, *Food for Thought*, 2021 WL 860345 at *1, *4 (plaintiff suspended operations to comply with government shutdown orders and court held that it "failed to plead facts sufficient to establish that it suffered a direct physical loss of or physical damage to its property, within the meaning of its policy with Sentinel"); *10012 Holdings*, 2020 WL 7360252 at *1-2 (plaintiff suspended operations in accordance with government shutdown orders and court held that "[n]othing in the Complaint plausibly supports an inference that COVID-19 and the resulting Civil Orders physically damaged Plaintiff's property, regardless of how the public health response to the virus may have affected business conditions for Plaintiff"); *Visconti Bus Service*, 2021 WL 609851 at *1, *10 (plaintiff suspended operations due to government shutdown orders and the court found that "[t]here is no allegation of any physical harm whatsoever to [plaintiff]'s premises").

Sharde Harvey attempts to avoid that obvious conclusion by arguing that "the impairment of function" of property created by "operation of law" can constitute "physical

damage." (Opp. at 8.) For that proposition, Sharde Harvey relies on one out-of-jurisdiction case in which General Mills could not use some of its oats because they contained trace amounts of a prohibited pesticide, even though it was never finally determined whether the oats were unsafe for human consumption. (Opp. at 8 (citing *General Mills, Inc. v. Gold Medal Insurance Co.*, 622 N.W.2d 147, 150 (Minn. Ct. App. 2001)).) The court concluded that the "impairment of function and value" of the oats was "sufficient to support a finding of physical damage." *General Mills*, 622 N.W.2d at 152. That conclusion is irrelevant here. Shutdown orders clearly impair the "function and value" of property. Yet courts applying New York law have repeatedly found that shutdown orders, standing alone, did not trigger business income insurance for the very reason that no physical damage to property had occurred. *Roundabout Theatre*, 302 A.D.2d at 7, 751 N.Y.S.2d at 8; *Food for Thought*, 2021 WL 860345 at *1, *5; *Alexandre B. DeMoura*, 2021 WL 848840 at *4-6; *10012 Holdings*, 2020 WL 7360252 at *1-3; *Michael Cetta*, 2020 WL 732140 at *1, *3, *8; *Tappo of Buffalo*, 2020 WL 7867553 at *2, *4; *Visconti Bus Service*, 2021 WL 609851 at *1, *10.

As to the third alleged cause of Sharde Harvey's slowdown, even the presence of COVID-19 on its property would not constitute "physical damage" to that property. *See, e.g.*, *Food for Thought*, 2021 WL 860345, at *1, *5 (motion to dismiss granted because plaintiff "failed to plead facts sufficient to establish that it suffered a direct physical loss of or physical damage to its property" even where plaintiff alleged "likely presence of COVID-19 on its property"); *Tappo of Buffalo*, 2020 WL 7867553 at *2, *4 (plaintiff alleged that presence of COVID-19 caused suspension of its operations and court held that such "plaintiffs cannot plausibly allege that th[e] impact [on their businesses] is the

result of direct physical loss of or damage to covered property"); *Visconti Bus Service*, 2021 WL 609851 at *10 ("even if Covid-19 were found at Visconti's premises, it would not constitute the direct, physical loss or damage required to trigger coverage").

That conclusion is necessitated by the unambiguous meaning of "physical damage." As Judge Garaufis in the Eastern District noted, Black's Law Dictionary defines "damage" as "[l]oss or injury to ... property; esp., physical harm that is done to something." *Alexandre B. DeMoura,* 2021 WL 848840 at *6 (internal quotation marks omitted). The presence of COVID-19 simply does not "physically harm" property. *See id.* And, as Judge Caproni succinctly articulated, COVID-19 damages lungs, not property. *Social Life Magazine*, 2020 WL 2904834 ("COVID-19 damages lungs. It doesn't damage printing presses.")

Plaintiff attempts to avoid that conclusion by citing numerous pre-COVID-19 cases from other jurisdictions holding that "physical loss does not require structural damage, and in the alternative, lost operations or inability to use the business is sufficient." (Opp. at 6-7.) That argument directly contradicts the *Roundabout Theater* conclusion that "loss of" does not encompass "loss of use." 302 A.D.2d at 7, 751 N.Y.S.2d at 8; *see also Newman Myers*, 17 F. Supp. 3d at 331 ("The Appellate Division thus specifically repudiated the lower court's holding that the phrase 'loss of' must include 'loss of use of' the insured premises"); *Food for Thought*, 2021 WL 860345 at *3 ("the court rejected the argument that 'loss of' includes 'loss of use' of the insured premises").

Additionally, in most of the pre-COVID-19, out-of-jurisdiction cases cited by Sharde Harvey where non-structural damage was held to be a "loss of or damage to

19

property," the non-structural damage was different in kind from the presence of COVID-19.  For example, those cases involved a discharge of ammonia gas rendering a juice plant "unfit for occupancy," e-coli contamination of well water, and large quantities of asbestos in the air of a building.  *Gregory Packaging, Inc. v. Travelers Property Casualty Co. of America*, No. 12-CV-4418, 2014 WL 6675934, at *8 (D.N.J. Nov. 25, 2014) (ammonia); *Motorists Mutual Insurance Co. v. Hardinger*, 131 F. App'x 823, 825-27 (3d Cir. 2005) (e-coli); *Port Authority of New York and New Jersey v. Affiliated FM Insurance Co.*, 311 F.3d 226, 230 (3d Cir. 2002) (asbestos).

In such cases, the non-structural damage would require non-routine, extensive remediation.  In contrast, courts applying New York law in COVID-19 cases have held that "contamination of the premises by a virus does not constitute a 'direct physical loss' because the virus's presence can be eliminated by 'routine cleaning and disinfecting,' and 'an item or structure that merely needs to be cleaned has not suffered' a direct physical loss."  *Food for Thought*, 2021 WL 860345 at *5 (quoting *Tappo of Buffalo*, 2020 WL 7867553 at *4 (collecting cases)); *see also Visconti Bus Service*, 2021 WL 609851 at *10 (COVID-19 at a premises "would not constitute the direct, physical loss or damage required to trigger coverage because its presence can be eliminated by routine cleaning and disinfecting").

That distinction is consistent with the one New York case cited by Sharde Harvey – *Schlamm Stone & Dolan, LLP v. Seneca Insurance Co.*, 800 N.Y.S.2d 356 (table), 2005 WL 600021 (Sup. Ct. 2005).  Although *Schlamm Stone* is not binding since it comes from a New York state trial rather than appellate court, the court will examine it in

some detail because it is relevant and none of the other courts that have applied New York law to COVID-19 insurance claims have addressed it.

In *Schlamm Stone*, plaintiff's business was interrupted due to the terrorist attacks of September 11, 2001.  2005 WL 600021 at *1.  The business first was closed from September 11 to September 16 because of a government shutdown order.  *Id.*  Even after the order was lifted, some employees were unable to work in the building because of noxious particles on surfaces and in the carpets and air, causing further business losses for the rest of the month.  *Id.* at *1-2.  The business sought coverage for business losses under a provision of its insurance requiring that the suspension of operations resulted from, *inter alia*, property damage.  *Id.* at *2.  Notably, the court held that the business could not recover for the period from September 11 to September 16 because the direct cause of its business interruption was the shutdown order, not property damage.  *Id.* at *2-3.  From September 17 onward, however, the court held that plaintiff had made out a prima facie case that its business losses were caused by property damage because the noxious particles on surfaces and in the carpets and air constituted property damage.  *Id.* at *3-5.

On the surface, that conclusion may appear to support Sharde Harvey's position. But the facts of the case reveal that the damage to Schlamm Stone's premises persisted "despite cleaning carpets, airshafts, furniture and surfaces in the office."  *Id.* at *2.  That fact places the damage to Schlamm Stone's premises firmly on the other side of the line drawn by the New York COVID-19 cases that have found that contamination by a virus does not constitute "direct physical loss" where the property merely needs to be cleaned and routine cleaning and disinfecting can eliminate its presence.  *Food for*

*Thought*, 2021 WL 860345 at *5; *Tappo of Buffalo*, 2020 WL 7867553 at *4; *Visconti Bus Service*, 2021 WL 609851 at *10.

Sharde Harvey's complaint directs the Court to a New York City shutdown order which stated that COVID-19 and the COVID-19 pandemic were, in fact, "causing property loss and damage." (Compl. ¶ 71.) The quoted shutdown order was one made by New York City Mayor Bill de Blasio following Governor Cuomo's state shutdown order. As an initial matter, when – as here – the language of the policy is clear, the Court need not consider external materials. *See American Commercial Lines LLC v. Water Quality Insurance Syndicate*, 679 F. App'x 11, 14 (2d Cir. 2017). Additionally, the Court is unaware of any precedent indicating that the statement of a municipal executive branch officer can alter the meaning of preexisting contract terms or overrule the decision of the state's appellate courts (here, changing the meaning of "loss of" and "damage"), and Sharde Harvey points to none. Furthermore, even if Mayor de Blasio's order could somehow establish that COVID-19 or the COVID-19 pandemic did, in fact, cause "property loss or damage," the order does not purport to establish that Sharde Harvey's premises suffered any such loss or damage. Such generalized allegations cannot suffice to establish coverage. *See Food for Thought*, 2021 WL 860345 at *5 ("Mayor de Blasio's statements are too general and unsupported by specific facts to allege plausibly that [plaintiff]'s property was damaged, and speculative allegations without factual support cannot serve as a basis for a claim").

Relatedly, Sharde Harvey argues that a Pennsylvania Supreme Court case affirming the governor's emergency powers supports its position. (Compl. ¶ 71, Opp. at 3, 11.) In that case, the court examined a statute stating that the governor could

exercise emergency powers after a "natural disaster," defined, in part, as any "other catastrophe which results in substantial damage to property, hardship, suffering or possible loss of life." *Friends of Danny DeVito v. Wolf*, 227 A.3d 872, 887 (Pa. 2020). In finding that the COVID-19 pandemic fit that definition, however, the Pennsylvania Supreme Court specifically omitted the phrase "substantial property damage." *Id.* at 888 ("It is beyond dispute that the COVID-19 pandemic is unquestionably a catastrophe that 'results in … hardship, suffering or possible loss of life'" (omission in original)).

Sharde Harvey also directs the Court to several out-of-jurisdiction cases that have reached the contrary conclusion on whether the presence of COVID-19 at a premises can create a "loss of" that property.  None of those cases involved the application of New York law, and that distinction is dispositive.  In its opposition to the motion to dismiss, Sharde Harvey primarily relies on *Studio 417, Inc. v. Cincinnati Insurance Co.*, 478 F. Supp. 3d 794, 799 (W.D. Mo. 2020), which applied Missouri law. (Opp. at 8-9.)  In addition, Sharde Harvey recently drew this Court's attention to *In re: Society Insurance Co. Covid-19 Business Interruption Protection Insurance Litigation*, MDL No. 2964, 2021 WL 679109, *1 (N.D. Ill. Feb. 22, 2021).  (Dkt. 48.)  *Society Insurance* involved multidistrict litigation consolidating several "bellwether cases" under Illinois, Wisconsin, Minnesota, and Tennessee law.  2021 WL 679109 at *1.  Both cases illustrate how New York law necessitates a different outcome.

As Judge Koeltl noted in *Food for Thought*, *Studio 417* interprets "'physical loss' [to] include[ ] 'loss of use,' which is contrary to New York law."  2021 WL 860345 at *5. And to the extent that the *Studio 417* court held that the presence of COVID-19 constitutes "physical damage," that holding is contrary to the determination by New York

courts that the clause "direct physical loss of or damage to" is not satisfied by the presence of a virus that can be eliminated with routine cleaning and disinfecting. *Food for Thought*, 2021 WL 860345 at *5; *Tappo of Buffalo*, 2020 WL 7867553 at *4; *Visconti Bus Service*, 2021 WL 609851 at *10.

The distinction between *Society Insurance* and New York law is even more stark. In *Society Insurance*, the court held that a reasonable jury could find that inability to fully use a premises constituted a physical loss, regardless of whether the cause of that restriction was COVID-19 on the premises, the COVID-19 pandemic generally, or even government shutdown orders. 2021 WL 679109 at *8-10. Once again, the "loss of use" theory is at odds with New York law. *Food for Thought*, 2021 WL 860345, at *4-5 & n.2 ("In [*Society Insurance*], the district court applied law from Illinois, Wisconsin, Minnesota, and Tennessee, and interpreted 'direct physical loss of property' to include the loss of physical use of the covered property, which has been rejected under New York law" (citing *Roundabout Theater*, 302 A.D.2d at 7, 751 N.Y.S.2d at 8)). And, the idea that a government shutdown order standing alone can trigger business interruption insurance has been consistently rejected by courts applying New York law. *Roundabout Theatre*, 302 A.D.2d at 7, 751 N.Y.S.2d at 8; *Schlamm Stone*, 800 N.Y.S.2d 356 (table), 2005 WL 600021 at *2-4; *Food for Thought*, 2021 WL 860345 at *1, *5; *Alexandre B. DeMoura,* 2021 WL 848840 at *4-6; *10012 Holdings*, 2020 WL 7360252 at *1-3; *Michael Cetta*, 2020 WL 732140 at *1, *3, *8; *Tappo of Buffalo*, 2020 WL 7867553 at *2, *4; *Visconti Bus Service*, 2021 WL 609851 at *1, *10.[12]

---

[12] *Society Insurance* also construed the "repair, rebuild, replace" language from the period of restoration provision differently than courts applying New York law have consistently done, finding that "[t]here is nothing inherent in the meanings of those

Finally, Sharde Harvey argues that whether COVID-19 can cause physical loss of or damage to property, and whether its losses were caused by a physical loss or damage, are issues of fact that cannot be decided on a motion to dismiss.  (Opp. at 4, 14-15.)  Sharde Harvey cites the split of authority on these issues as evidence of its position.  (Opp. at 15.)  The interpretation of a contract, however, is a matter of law for the court to decide, and if, as here, the provisions are "unambiguous and understandable, courts are to enforce them as written." *Parks Real Estate*, 472 F.3d at 42.  As consistently and repeatedly held by courts applying New York law, "direct physical loss of or physical damage to" requires some direct physical damage and is not satisfied by government shutdown orders, the COVID-19 pandemic generally, or even the presence of COVID-19 at a premises.  *Food for Thought*, 2021 WL 860345, at *2-5 (finding no coverage and granting motion to dismiss under same standard); *Alexandre B. DeMoura*, 2021 WL 848840 at *6 (same); *10012 Holdings*, 2020 WL 7360252 at *2-3 (same); *Michael Cetta*, 2020 WL 7321405 at *2, 5-11 (same); *Tappo of Buffalo*, 2020 WL 7867553 at *3-4 (same).[13]

---

words that would be inconsistent with characterizing the Plaintiffs' loss of their space due to the shutdown orders as a physical loss," and noting that partitions and ventilations systems could be installed to minimize the risk of COVID-19.  2021 WL 679109 at *9.

[13] Sharde Harvey asserts throughout its complaint and opposition that the policy at issue is an "all-risk" policy, meaning that "losses caused by any fortuitous peril not specifically excluded under the policy will be covered."  *Parks Real Estate*, 472 F.3d at 41. As Judge Schofield noted in *10012 Holdings*, that characterization of the policy is inaccurate.  2020 WL 7360252 at *3.  And as explained above, beyond specific exclusions, the types of losses covered by the policy are limited by, among other things, the phrase "direct physical loss of or damage to."

Sharde Harvey also asks the Court to consider documents external to the insurance policy drafted by the Insurance Services Office ("ISO").  (Opp. at 12-13.)  The ISO

For all of the above reasons, Sharde Harvey is not entitled to coverage under the Business Income provision of the Sentinel policy.

**B.    Extra Expense**

Under the Extra Expense provision, Sentinel agreed to pay for extra expenses incurred during a period of restoration following a "direct physical loss or physical damage to property" at Sharde Harvey's premises.  (Policy at 42, § A.5.p.(1).)  Sharde Harvey's premises did not suffer a "direct physical loss or physical damage to property." Sharde Havey thus is not entitled to coverage under the Extra Expense provision.  *See Food for Thought*, 2021 WL 860345 at *5 ("because the Extra Expense coverage provision, like the Business Income coverage provision, requires that the insured suffer a 'direct physical loss or physical damage,' Food for Thought also failed to plead facts sufficient to establish that the Extra Expense provision was triggered" (internal citation omitted)); *10012 Holdings*, 2020 WL 7360252 at *3 ("Because, as described above, the Complaint does not allege a direct physical loss, the Complaint fails to state a claim for Extra Expense coverage"); *Michael Cetta*, 2020 WL 7321405 at *11 ("As detailed above, the Complaint fails to plead facts alleging such 'physical loss or damage.' Therefore, … [plaintiff] has not alleged sufficient facts with respect to the extra expense provision to establish the declaratory relief it seeks or to establish a breach of contract").

---

provides standardized language for insurance policies.  Sharde Harvey argues that the ISO "has affirmed that a virus can cause physical loss and damage merely by its presence."  (Opp. at 13.)  Sentinel argues that the ISO has said the opposite.  (Mem. at 18.)  Since the Court finds the contractual language unambiguous, it will not look to external documents.  *American Commercial Lines*, 679 F. App'x at 14.

Finally, Sharde Harvey argues that Sentinel is attempting to rely on a virus exclusion. (Opp. at 1-2, 16, 20-22.)  However, Sentinel nowhere argues that one applies.

**C.     Civil Authority**

Under the Civil Authority provision, Sentinel agreed to pay any loss of income that Sharde Harvey sustained when "access to" its premises was "specifically prohibited by order of a civil authority as the direct result of a Covered Cause of Loss [defined as "risk of direct physical loss"] to property in the immediate area."   (Policy at 43, § A.5.q.(1), 34, § A.3 (defining "Covered Cause of Loss").)   To demonstrate that Civil Authority coverage may apply to its losses under that provision, Sharde Harvey would thus need to plausibly allege two things: (1) that an order from a civil authority specifically prohibited "access to" its premises; and (2) that the civil authority order was "the direct result of a risk of direct physical loss to property in the immediate area."   *See Food for Thought*, 2021 WL 860345 at *6; *10012 Holdings*, 2020 WL 7360252 at *3.

In determining whether Sharde Harvey plausibly pleaded such facts, the Court once again does not write on a blank slate.   Nearly all of the New York COVID-19 cases discussed above also addressed Civil Authority provisions; they involved the exact same New York shutdown orders at issue here; and all of them found that the plaintiffs were not entitled to coverage.   Among the cases, however, the language of the Civil Authority provisions – unlike the Business Income provisions -- have some differences, with varying degrees of similarity to the one at issue here.

In *Food for Thought* and *10012 Holdings*, the provisions were identical to the one at issue here.   *Food for Thought*, 2021 WL 860345 at *6; *10012 Holdings*, 2020 WL 7360252 at *3.   In *Visconti Bus Service*, the provision required that the civil authority order prohibit access to the premises and be caused by "direct physical loss of or damage to property" rather than "risk of direct physical loss to property in the immediate

area."  2021 WL 609851 at *2.  In *Michael Cetta*, the provision required that the civil authority order prohibit access to the immediate area, as well as to the insured premises, and that the civil authority order was the result of "damage to property other than property at the described premises" rather than "risk of direct physical loss to property in the immediate area."  2020 WL 7321405 at *2.  In *Alexandre B. DeMoura*, the provision required "direct physical loss of or damage to property" at locations other than the insured premises, and its analysis of the Civil Authority provision relied exclusively on the limitation of "loss of or damage to."  2021 WL 848840 at *6-7.  In *Tappo of Buffalo* and *Social Life Magazine*, the court did not independently examine the Business Income and Civil Authority provisions.  The Court thus relies on the foregoing cases to varying extents in analyzing the Civil Authority provision here.

Nothing about New York's shutdown orders enable Sharde Harvey to satisfy the express requirements of the Civil Authority provision.  Sharde Harvey cannot plausibly plead that the shutdown orders (1) prohibited "access to" its premises; or (2) were "the direct result of a risk of direct physical loss to property in the immediate area."  As to the first element, the government shutdown orders limited access to Sharde Harvey's premises, but did not prohibit it.  Indeed, Sharde Harvey alleges that it was able to continue emergency services once per week or every other week throughout the slowdown.  (Compl. ¶¶ 9, 43, 77, 82.)

As Judge Koeltl explained in *Food for Thought*, limiting access is distinct from prohibiting access, such as in a situation where an unsafe condition at an adjoining building would require a safety evacuation.  2021 WL 860345 at *6.  That distinction is well established.  *E.g.*, *Abner, Herrman & Brock, Inc. v. Great Northern Insurance Co.*,

308 F. Supp. 2d 331, 336-37 (S.D.N.Y. 2004) (Manhattan broker-dealer was entitled to civil authority coverage from September 11, 2001, through September 14, 2001, because access to its office was completely denied by government action, but not for subsequent dates when access was only restricted).

Following the plain reading of the Civil Authority provision, New York courts have consistently found that the same government shutdown orders at issue here did not "prohibit" access to premises that would otherwise trigger coverage. *Food for Thought*, 2021 WL 860345 at *6 ("Food for Thought's allegation that the civil authority orders prohibited access to its 'property for its intended purpose' is not enough to trigger the Civil Authority coverage provision. … [B]ecause no civil authority order denied complete access to the plaintiff's premises, the Amended Complaint fails to allege that access was 'specifically prohibited'"); *Michael Cetta*, 2020 WL 7321405, at *12 ("[Plaintiff] has not alleged that access was ever denied completely to the restaurant [and] … under the plain meaning of the Policy, if employees (but not patrons) were allowed access to the indoor portions of the restaurant, civil authority did not prohibit access").

Even in *Society Insurance* – the multidistrict "bellwether" litigation where the court found that the Business Income provision applied under a "loss of use" theory – the court determined that Civil Authority coverage did not apply.  2021 WL 679109 at *10. The court explained that "the problem for the Plaintiffs is that the action of the civil authority must 'prohibit access' to the premises," and that "even if the general public is prohibited from congregating in the covered premises, there is no allegation that employees are outright prohibited from accessing the premises."  *Id.* (brackets omitted). The court concluded that "[t]he Civil Authority coverage is not triggered by mere 'loss of'

property; there must be 'prohibited' 'access.'"[14]  *Id.*  Sharde Harvey has not alleged that it was ever completely denied access to its premises.  The government shutdown orders at issue contain no such prohibition.  Sharde Hardey thus has not plausibly pleaded that it was denied access to its premises.

Even if Sharde Harvey could demonstrate that access to its premises was prohibited, it has not plausibly alleged that the prohibition was the "direct result of a Covered Cause of Loss [defined as "risk of direct physical loss"] to property in the immediate area."  That is so for at least four reasons.  First, the shutdown orders were the result of the COVID-19 pandemic and, as discussed at length above, under New York law, COVID-19 and the COVID-19 pandemic do not constitute a "direct physical loss" to property.  *Food for Thought*, 2021 WL 860345 at *5; *Tappo of Buffalo*, 2020 WL 7867553 at *4; *Visconti Bus Service*, 2021 WL 609851 at *10; *10012 Holdings*, 2020 WL 7360252 at *2-3; *Michael Cetta*, 2020 WL 7321405 at *11.

Second, even if COVID-19 or the COVID-19 pandemic poses a risk of "direct physical loss" to property, Sharde Harvey has not alleged with any specificity that the government shutdown orders were the result of such a risk "to property in the immediate area."  The Complaint does not name any specific business "in the immediate area" that reported a case of COVID-19, let alone one that led to the government shutdown orders.  *See Food for Thought*, 2021 WL 860345 at *7 ("generalized statements cannot serve as a substitute for a specific allegation that any property near the insured's premises was in fact damaged").

---

[14] Like in *Michael Cetta*, in *Society Insurance*, the policy at issue also required the civil authority orders to prohibit access to the immediately surrounding areas.  That is not a requirement of the Civil Authority provision at issue here, but those courts' discussion of prohibitions on access to the subject premises remains relevant.

Third, as *Food for Thought*, *10012 Holdings*, and *Visconti Bus Service* delineated, the provision at issue contemplates a scenario where "physical harm [or risk of harm] to someone else's premises has caused the civil authorities to prohibit access to the insured's premises," but with the COVID-19 government shutdown orders, "both premises are restricted for the same reason: to limit the risk of spreading the Covid-19 virus.  This simply does not implicate Civil Authority coverage."  *Visconti Bus Services*, 2021 WL 609851 at *12; *accord Food for Thought*, 2021 WL 860345 at *6; *see also 10012 Holdings*, 2020 WL 7360252 at *4 ("the Complaint does not allege that these closures of neighboring properties 'direct[ly] result[ed]' in closure of Plaintiff's own premises, as the Civil Authority provisions require.  Instead, the Complaint alleges that Plaintiff was forced to close for the same reason as its neighbors – the risk of harm to individuals on its own premises due to the pandemic.  Put differently, the Complaint does not plausibly allege that the potential presence of COVID-19 in neighboring properties directly resulted in the closure of Plaintiff's properties; rather, it alleges that closure was the direct result of the risk of COVID-19 at Plaintiff's property" (alterations in original)).

Fourth, "direct physical loss to property in the immediate area" clearly connotes a localized problem, like the scaffolding collapse in *Roundabout Theater*.  In stark contrast, COVID-19 is a global pandemic.  It cannot be true that where a government order shuts down every business in a state (or country, or continent), each business would be entitled to coverage under this provision, because every single neighboring business in every single "immediate area" in the state faces the same "direct risk of physical loss" from the same pandemic.

31

Sharde Harvey attempts to circumvent the unambiguous meaning of the Civil Authority provision by again pointing to the Pennsylvania Supreme Court's decision in *DeVito* and the language of Mayor de Blasio's shutdown order to argue that the shutdown order was, in fact, the result of "damage to property."  (Opp. at 18-19.)  Those arguments fail for the same reason they failed to establish "direct physical loss of or physical damage to property" under the Business Income provision.  Sharde Harvey grossly mischaracterizes the holding in *DeVito*, where, in finding that the COVID-19 pandemic fits the definition of "natural disaster," the court specifically omitted from that definition the phrase "substantial property damage."  *Friends of Danny DeVito*, 227 A.3d at 888.  And, once again, Mayor de Blasio's order cannot redefine preexisting contract terms or overrule the state appellate courts' interpretation of the law.  Even if it could, his order did not state with any specificity that property in the "immediate area" of Sharde Harvey was at risk of direct physical loss, let alone that it was that specific risk of loss that led to the shutdown order.  *See Food for Thought*, 2021 WL 860345 at *7 (holding that the generalized statement in de Blasio's order did not suffice to establish risk of danger to property in the "immediate area").

As with the Business Income provision, Sharde Harvey argues that, at minimum, the language of the provision is unclear and thus granting a motion to dismiss would be inappropriate.  (Opp. at ¶ 18.)  As explained above, that is untrue.  The language of the provision unambiguously does not cover Sharde Harvey's losses, warranting dismissal. *Food for Thought*, 2021 WL 860345 at *7 (granting motion to dismiss in case involving materially similar facts and identical Civil Authority provision); *10012 Holdings*, 2020 WL 7360252 at *4 (same); *Visconti Bus Services*, 2021 WL 609851 at *13 (granting motion

to dismiss in case involving materially similar facts and materially identical Civil Authority provision).

For all of the above reasons, Sharde Harvey is not entitled to coverage under the Civil Authority provision of the policy.

### D.  Sharde Harvey's Specific Requests for Declaratory Judgment

Sharde Harvey brings only one claim – declaratory judgment.   (Compl. ¶ 20.) Within that claim, however, Sharde Harvey seeks eight declarations, phrased as follows:

(1)   The Civil Authority Orders constitute a prohibition of access to Plaintiff's Insured Property.

(2)   The prohibition of access by the Civil Authority Orders specifically prohibited access as defined in the Policy.

(3)   The Civil Authority Orders trigger coverage under the Policy.

(4)   The Policy provides coverage to Plaintiff for any current and future closures in New York due to physical loss or damage directly or indirectly from the Coronavirus and/or pandemic circumstance under the Civil Authority coverage parameters.

(5)   Defendant's denial of coverage for losses sustained that were caused by the entry of the Civil Authority Orders referenced, and Plaintiff's adherence to the Civil Authority Orders, violates public policy.

(6)   Under the circumstances of this Pandemic and the entry of the Civil Authority Orders referenced, Plaintiff had no choice but to comply with the Civil Authority Orders, and that Plaintiff's compliance resulted in Plaintiff suffering business losses, business interruption and extended expenses which is therefore a covered expense.

(7)   The Policy provides coverage to Plaintiff for any current, future and continued closures of non-essential businesses due to physical loss or damage directly or indirectly from the Coronavirus.

(8)   The Policy provides business income coverage in the event that Coronavirus has directly or indirectly caused a loss or damage at the Plaintiff's Insured Property or the immediate area of the Plaintiff's Insured Property.

(Compl. at 21-22, Prayer for Relief.[15])

The Court's discussion above analyzed whether Sharde Harvey's losses were covered under the relevant provisions of policy, but did not address these declaratory judgment requests specifically.   Although all of the requests are clearly aimed at demonstrating that Sharde Harvey's losses should be covered, for completeness, the Court will also now address each specific request.

Requests (1) and (2) should be dismissed because the civil authority orders did not constitute "a prohibition of access," as discussed above.   Requests (3) and (6) should be dismissed because, for all of the reasons discussed above, the civil authority orders do not trigger coverage under any of the provisions of the policy.

Request (4) is worded awkwardly and overbroad.   It appears to be requesting a declaration that any current or future closure "due to physical loss or damage" caused by COVID-19 is and would be covered under the Civil Authority provision.   The requested declaration omits the required elements that the physical loss or damage was to property in the immediate area, and that closure "prohibited access" to the covered premises.   Without those two elements, Request (4) must be dismissed as incorrect on its face.   Additionally, because, under New York law, COVID-19 does not cause "physical loss or damage," no such situation would arise under the facts before the Court.   Requests (7) and (8) suffer the same infirmity, and should thus be dismissed, as well.   To the extent that requests (4), (7), and (8) are asking the Court to hypothesize about some other set of facts where COVID-19 does cause "loss of or damage to"

---

[15] Sharde Harvey reiterates these requests in various places in its Complaint, but this section contains the most comprehensive list.

property, Sharde Harvey is seeking an advisory opinion to which it is not entitled.  *See Olin Corp. v. Consolidated Aluminum Corp.*, 5 F.3d 10, 17 (2d Cir. 1993).

Request (5) should be dismissed because Sentinel's denial of coverage does not violate public policy.  Sharde Harvey makes no argument at all, let alone a persuasive one, as to why Sentinel's denial violates public policy – Sharde Harvey's opposition brief simply does not address it.  Sentinel was merely following the terms of the policy. Under those terms, it had no duty to reimburse Sharde Harvey for complying with the shutdown orders.  Sharde Harvey's claim for declaratory judgment should thus be dismissed in its entirety.

### E.    Dismissal With or Without Prejudice

Sharde Harvey has already amended its complaint three times, twice in response to proposed motions to dismiss; and, at this juncture, Sharde Harvey has not requested leave to amend if Sentinel's motion to dismiss is granted.  In any event, amendment would be futile in light of the foregoing analysis.  Accordingly, the Court recommends dismissing this case with prejudice.  *See Food for Thought*, 2021 WL 860345 at *7 ("The plaintiff has previously filed an amended complaint and has not asked for the opportunity to file a second amended complaint.  Therefore, the Clerk is directed to enter judgment dismissing this case."); *10012 Holdings*, 2020 WL 7360252 at *4 ("Leave to amend is denied because the Policy does not provide coverage for the loss Plaintiff suffered").

### Conclusion

The Court is not unsympathetic to the plight of Sharde Harvey and other similarly situated businesses and business owners.  But the Court must take care not to "make

or vary the contract of insurance to accomplish its notions of abstract justice or moral obligation," and the language of the insurance policy here unambiguously does not cover Sharde Harvey's losses under prevailing New York law.  *See Keyspan Gas*, 31 N.Y.3d at 63, 73 N.Y.S.3d at 120.  For all of the reasons explained above, the Court recommends that Sentinel's motion to dismiss be GRANTED and the case be dismissed with prejudice.

### Procedures for Filing Objections

Pursuant to 28 U.S.C. § 636(b)(1) and Rules 72, 6(a), and 6(d) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days to file written objections to this Report and Recommendation.  Such objections shall be filed with the Clerk of Court, with extra copies delivered to the Chambers of the Honorable Paul G. Gardephe, United States Courthouse, 40 Foley Square, New York, New York 10007, and to the Chambers of the undersigned, United States Courthouse, 500 Pearl Street, New York, New York 10007.  **FAILURE TO FILE TIMELY OBJECTIONS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW.**

Respectfully submitted,

ROBERT W. LEHRBURGER
UNITED STATES MAGISTRATE JUDGE

Dated: New York, New York
        March 18, 2021

Copies transmitted this date to all counsel of record.