**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| |
|---|
| SHARDE HARVEY, D.D.S., PLLC,<br><br>Plaintiff,<br><br>*—against—*<br><br>SENTINEL INSURANCE COMPANY, LTD.,<br><br>Defendant. |

20 Civ. 3350 (PGG)

**DEFENDANT SENTINEL INSURANCE COMPANY, LTD.'S**
**RESPONSE TO PLAINTIFF'S OBJECTIONS TO MAGISTRATE JUDGE**
**LEHERBURGER'S REPORT AND RECOMMENDATION**
**THAT THE COURT GRANT SENTINEL'S MOTION TO DISMISS**

STEPTOE & JOHNSON LLP
1330 Connecticut Avenue, NW
Washington, DC 20036
(202) 429-3000

1114 Avenue of the Americas
New York, New York 10036
(212) 506-3900

April 29, 2021

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ................................................................................................. 1

DISCUSSION ...................................................................................................... 3

    I.    Judge Lehrburger' s Report and Recommendation is Supported
        by the Uniform Weight of Authority in New York, and the
        Overwhelming Weight of Authority Across the Country ...................................... 3

    II.   Judge Lehrburger Correctly Applied the Binding Decision in *Roundabout* ........... 9

    III.  Judge Lehrburger Did Not Conflate "Physical Loss" and "Physical Damage" .... 11

    IV.  Sharde Harvey's Premises Were Not "Uninhabitable" or "Unsafe" ................... 12

    V.   Sharde Harvey's New Argument About "Significant" Cleaning Efforts
       Is Both Waived and Incorrect ............................................................. 13

    VI.  The Alleged Physical Presence of the Virus on Site Is Irrelevant ....................... 16

    VII. Labeling the Policy "All-Risk" Does Not Alter the Contract Terms ................... 18

CONCLUSION .................................................................................................. 19

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*10012 Holdings, Incorporated. v. Hartford Fire Insurance Company,*
  20 Civ. 4471, 2020 WL 7360252 (S.D.N.Y. Dec. 15, 2020)..................................4, 5

*6593 Weighlock Drive, LLC v. Springhill SMC Corporation,*
  No. 4799/2020, 2021 WL 1419049 (N.Y. Sup. Ct. Apr. 13, 2021).........................3

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009)..........................................................................................16

*Brian Handel D.M.D., P.C. v. Allstate Insurance Company,*
  No. 20-3198, 2020 WL 6545893 (E.D. Pa. Nov. 6 2020) ......................................13

*Cafe Plaza De Mesilla Inc. v. Continental Casualty Company,*
  No. 2:20-cv-354, 2021 WL 601880 (D.N.M. Feb. 16, 2021).................................16

*Circus Circus LV, LP v. AIG Specialty Insurance Company,*
  No. 2:20-cv-01240, 2021 WL 769660 (D. Nev. Feb. 26, 2021)............................18

*deMoura v. Continental Casualty Company,*
  20 Civ. 2912, 2021 WL 848840 (E.D.N.Y. Mar. 5, 2021) ...........................4, 6, 11

*Derek Scott Williams PLLC v. Cincinnati Insurance Company,*
  No. 20 C 2806, 2021 WL 767617 (N.D. Ill. Feb, 28 2021).....................................7

*Emerald Coast Rests., Incorporated v. Aspen Specialty Insurance Company,*
  No. 3:20cv5898-TKW-HTC, 2020 WL 7889061 (N.D. Fla. Dec. 18, 2020)........................19

*Food for Thought Caterers Corporation. v. Sentinel Insurance Company,*
  20 Civ. 3418, 2021 WL 860345 (S.D.N.Y. Mar. 6, 2020) ............................. *passim*

*Jeffrey M. Dressel, D.D.S., v. Hartford Insurance Company of the Midwest,
  Incorporated,*
  No. 20-CV-2777, 2021 WL 1091711 (E.D.N.Y. Mar. 22, 2021)................................... *passim*

*Kim-Chee LLC v. Phil. Indemnity Insurance Company,*
  No. 1:20-cv-1136, 2021 WL 1600831 (W.D.N.Y. April 23, 2021) ...................................3, 15

*Kingray Incorporated. v. Farmers Group Incorporated,*
  No. EDCV 20-963, 2021 WL 837622 (C.D. Cal. Mar. 4, 2021 2021).....................8

*Mangia Restaurant Corporation. v. Utica First Insurance Company*,
No. 713847/2020................................................................................................3

*Mark's Engine Company No. 28 Restaurant, LLC v. Travelers Indemnity
Company*,
2:20-cv-04423, 2020 WL 5938689 (C.D. Cal. Oct. 2, 2020) ...........................10, 11

*MGN Logistics, Incorporated. v. Travelers Property Casualty Company*,
No. 16 CV 4301, 2017 WL 3780280 (N.D. Ill. Aug. 31, 2017) ............................12

*Michael Cetta, Incorporated v. Admiral Indemnity Company*,
20 Civ. 4612, 2020 WL 7321405 (S.D.N.Y. Dec. 11, 2020).....................4, 5, 6, 13

*Mohawk Gaming Enterprises, LLC v. Affiliated FM Insurance Company*,
8:20-CV-701, 2021 WL 1419782 (N.D.N.Y. April 15, 2021) ...............................3

*Newman Myers Kreines Gross Harris, P.C. v. Great Northern Insurance
Company*,
17 F. Supp. 3d 323 (S.D.N.Y. 2014)...........................................................9

*Pahuta v. Massey-Ferguson, Incorporated*,
170 F.3d 125 (2d Cir. 1999)....................................................................6, 9

*Pepsico v .Winterthur International American Insurance*,
6 Misc. 3d 1006(A), 2004 WL 3092342 (N.Y. Sup. Ct. Dec. 10, 2004)..................8

*Pepsico v. Winterthur International American Insurance Company*,
788 N.Y.S.2d 142 (2d Dep't 2004)...............................................................8

*Pepsico v .Winterthur  International American Insurance Company*,
806 N.Y.S.2d 709 (2d Dep't 2005)..............................................................8, 9

*Plan Check Downtown III, LLC v. AmGuard Insurnace Company*,
485 F. Supp. 3d 1225 (C.D. Cal. 2020) .........................................................10

*Port Authority v. Affiliated FM Insurance Company*,
311 F.3d 226 (3d Cir. 2002)....................................................................12, 13

*Promotional Headwear*
2020 WL 7078735 ...............................................................................15, 16

*Razzoli v. Federal Bureau of Prisons*,
No. 12 Civ. 3774, 2014 WL 2440771 (S.D.N.Y. May 30, 2014)...........................13

*Real Hospitality, LLC v. Travelers Casualty Insurance Company of America*,
No. 2:20-cv-00087, 2020 WL 6503405 (S.D. Miss. Nov. 4, 2020) ......................19

*Rokeach v. Hanover Insurance Company*,
　No. 1:13-cv-5011-GHW, 2015 WL 2400097 (S.D.N.Y. May 19, 2015) ........................11, 12

*Roundabout Theatre Co. v Continental Casualty Company*,
　751 N.Y.S.2d 4 (1st Dep't 2002) ..................................................................................... *passim*

*Roy H. Johnson, DDS v. Hartford Financial Services Group, Incorporated*,
　No. 1:20-cv-02000, 2021 WL 37573 (N.D. Ga. Jan. 4, 2021) ................................................16

*Rye Ridge Corporation. v. The Cincinnati Insurance Company*,
　20 Civ. 7132, 2021 WL 1600475 (S.D.N.Y. April 23, 2021)....................................................3

*Schlamm Stone & Dolan, LLP v. Seneca Insurance Company*,
　No. 603009/2002, 6 Misc. 3d 1037(A), 2005 WL 600021 (N.Y. Sup. Ct. Mar.
　04, 2005) ..............................................................................................................................17

*Social Life Magazine, Incorporated. v. Sentinel Insurance Company*,
　No. 20 Civ. 3311, 2020 WL 2904834 (S.D.N.Y. May 14, 2020)..............................................4

*In re Society Insurance Company COVID-19 Business Interruption Protection*
　*Insurance Litigation*,
　MDL No. 2964, 2021 WL 679109 (N.D. Ill. Feb. 22, 2021)................................................7, 8

*Soundview Cinemas Incorporated v. Great American Insurance Company*,
　Index No. 605985-20, 2021 WL 561854 (N.Y. Sup. Ct. Feb. 10, 2021)..................................4

*Tappo of Buffalo, LLC v. Eerie Insurance Company*,
　20-CV-754, 2020 WL 7867553 (W.D.N.Y. Dec. 29, 2020)..........................................4, 5, 14

*Torgerson Properties, Incorporated v. Continental Casualty Company*,
　No. 20-2184, 2021 WL 615416 (D. Minn. Feb. 17, 2021)....................................................18

*Total Intermodal Services Incorporated v. Travelers Property Casualty Company*,
　CV 17-04908, 2018 WL 3829767 (C.D. Cal. July 11, 2018) ................................................10

*Town Kitchen LLC v. Certain Underwriters at Lloyd's, London*,
　No. 20-22832, 2021 WL 768273 (S.D. Fla. Feb. 26, 2021) ................................................18

*Uncork and Create LLC v. Cincinnati Insurance Company*,
　No. 2:20-cv-00401, 2020 WL 6436948 (S.D. W.Va. Nov. 2, 2020)......................................15

*Unmasked Management, Incorporated v. Century-National Insurance Company*,
　No. 3:20-cv-01129, 2021 WL 242979 (S.D. Cal. Jan. 22, 2021) ...........................................15

*Visconti Bus Services, LLC v. Utica National Insurance Group*,
　No. EF005750-2020, 2021 WL 609851 (N.Y. Sup. Ct. Feb. 12, 2021)....................4, 6, 9, 14

*Whiskey Flats, Incorporated v. Axis Insurance Company*,
No. 20-3451, 2021 WL 534471 (E.D. Pa. Feb. 12, 2021) ...............................................17, 18

**Other Authorities**

Executive Order, 9 NYCRR 8.202.8 (Mar. 20, 2020) ..................................................................17

Transmission for Indoor Community Environments (April 5, 2021),
https://www.cdc.gov/coronavirus/2019-ncov/more/science-and-
research/surface-transmission.html.........................................................................................14

## INTRODUCTION

Magistrate Judge Lehrburger issued a thorough and well-reasoned report and recommendation urging that this insurance coverage case be dismissed, *see Sharde Harvey, DDS, PLLC v. Sentinel Insurance Company, Ltd*., 20-cv-3350, 2021 WL 1034259 (S.D.N.Y. Mar. 18, 2021), and this Court should uphold that recommendation.

The plaintiff ("Sharde Harvey") is a dental practice that claims its business interruption losses from the COVID 19 pandemic are covered under a property insurance policy with defendant Sentinel Insurance Company Ltd. ("Sentinel"). The underlying policy covers only "direct physical loss" or "physical damage" to property, but no particular property at the premises is alleged to have been damaged or lost. Instead, Sharde Harvey argues that various governmental orders, and the pandemic more generally, have caused a slowdown in its business. New York law is clear that this is not covered. All fifteen New York decisions to have addressed the question (including Judge Lehrburger's report and recommendation) have agreed, and with good reason. The terms "direct" and "physical" limit coverage to events that cause a tangible change in property at the premises, and cannot be stretched to encompass operational losses from external factors, such as government orders or the economic effects of the COVID-19 pandemic.

This conclusion is further confirmed by language in the policy stating that the coverage at issue ends after the time period when the property should be "repaired" or "replaced"—meaning that coverage is triggered in the first place only when property has suffered the sort of damage or loss requiring repairing or replacing. No such loss or damage is alleged.

Sharde Harvey has objected to Judge Lehrburger's report and recommendation, but its various arguments are all meritless.

First, Sharde Harvey cites to outlier decisions that are inconsistent with the uniform COVD-19 case law in New York and with the overwhelming trend nationwide.

Second, Sharde Harvey tries but fails to distinguish the seminal New York case on "direct physical loss," *Roundabout Theatre Co. v Continental Casualty Co.*, 751 N.Y.S.2d 4 (1st Dep't 2002). *Roundabout* held that restrictions on the use of property from governmental orders do not amount to "direct physical loss," and that holding has been followed uniformly in the COVID-19 cases. Contrary to Sharde Harvey's arguments, federal courts applying New York law are bound by Appellate Division precedent like *Roundabout*.

Third, Sharde Harvey accuses Judge Lehrburger of confusing the concepts of "loss" and "damage" by treating them as the same. But it is Sharde Harvey that is confused. The report and recommendation explains clearly (citing *Roundabout*) that "direct physical loss" refers to property that goes missing or is stolen, whereas "direct physical damage" refers to property that has been tangibly harmed. Neither of these concepts can encompass the facts here, involving mere operational restrictions or economic losses.

Fourth, Sharde Harvey's argument that its premises were rendered "uninhabitable" is inconsistent with its own complaint, which concedes that emergency dental procedures were performed. Sharde Harvey also concedes that it regularly cleans the premises, which likewise confirms that premises can be occupied.

Fifth, Sharde Harvey for the first time argues that it has had to undertake cleaning efforts that it contends are "significant," but ignores the broader point that there is a clear difference between property that requires cleaning (even significant clearing) and property that is damaged and hence in need of "repair," as the policy requires. Sharde Harvey has alleged only the former, and does not even attempt to address the policy's reference to "repair[ing]" damaged property.

Sixth, Sharde Harvey's assertion that the coronavirus was likely present at its offices should be rejected as speculation but in all events cannot save its claim because any viral

presence could concededly be cleaned away. In addition, the alleged local presence of the virus was not the *cause* of Sharde Harvey's losses. Its business was slowed by governmental "stay at home" orders, and the pandemic more generally—factors that would disrupt Sharde Harvey's business, irrespective of whether or to what extent viral particles were present at its offices.

Finally, Sharde Harvey litters its brief with bolded, capitalized descriptions of the policy as an "all-risk" policy, suggesting that any interruption in its business should trigger coverage. Not so. The scope of coverage is set forth in the policy itself, and cannot be overridden by Sharde Harvey's inaccurate, shorthand label of "all risk." In fact, the policy covers only certain *property*-relates risks, which are not alleged to have occurred here.

The Court should uphold Judge Lehrburger's report and recommendation.

## DISCUSSION

### I.   JUDGE LEHRBURGER'S REPORT AND RECOMMENDATION IS SUPPORTED BY THE UNIFORM WEIGHT OF AUTHORITY IN NEW YORK, AND THE OVERWHELMING WEIGHT OF AUTHORITY ACROSS THE COUNTRY

Judge Lehrburger's report and recommendation is among fifteen New York cases to have addressed the question of whether business interruption from the COVID-19 pandemic triggers insurance coverage for "direct physical loss" or "direct physical damage." *All fifteen* have ruled against coverage. *Rye Ridge Corp. v. The Cincinnati Ins. Co*., 20 Civ. 7132, 2021 WL 1600475, at *1 (S.D.N.Y. April 23, 2021); *Kim-Chee LLC v. Phil. Indem. Ins. Co*., No. 1:20-cv-1136, 2021 WL 1600831, at *1 (W.D.N.Y. April 23, 2021); *Mohawk Gaming Enterprises, LLC v. Affiliated FM Ins. Co.*, 8:20-CV-701, 2021 WL 1419782 (N.D.N.Y. April 15, 2021); *6593 Weighlock Drive, LLC v. Springhill SMC Corp.*, No. 4799/2020, 2021 WL 1419049 (N.Y. Sup. Ct. Apr. 13, 2021); *Mangia Restaurant Corp. v. Utica First Ins. Co.*, No. 713847/2020, NYSCEF No. 34 (N.Y. Sup. Ct., Qns. Cnty. March 31, 2021) (*available at* https://tinyurl.com/26zayedh); *Jeffrey M. Dressel, D.D.S., v. Hartford Ins. Co. of the Midwest, Inc.,* No. 20-CV-2777, 2021 WL

- 3 -

;1091711 (E.D.N.Y. Mar. 22, 2021); *Food for Thought Caterers Corp. v. Sentinel Ins. Co.*, 20 Civ. 3418, 2021 WL 860345 (S.D.N.Y. Mar. 6, 2020); *deMoura v. Cont'l Cas. Co.*, 20 Civ. 2912, 2021 WL 848840 (E.D.N.Y. Mar. 5, 2021); *Visconti Bus Serv, LLC v. Utica Natl. Ins. Group*, No. EF005750-2020, 2021 WL 609851 (N.Y. Sup. Ct. Feb. 12, 2021); *Soundview Cinemas Inc. v. Great Am. Ins. Co*., Index No. 605985-20, 2021 WL 561854 (N.Y. Sup. Ct. Feb. 10, 2021); *Tappo of Buffalo, LLC v. Eerie Ins. Co*., 20-CV-754, 2020 WL 7867553 (W.D.N.Y. Dec. 29, 2020); *10012 Holdings, Inc. v. Hartford Fire Ins. Co*., 20 Civ. 4471, 2020 WL 7360252 (S.D.N.Y. Dec. 15, 2020); *Michael Cetta, Inc. v. Admiral Indem. Co*., 20 Civ. 4612, 2020 WL 7321405 (S.D.N.Y. Dec. 11, 2020); *Social Life Magazine, Inc. v. Sentinel Ins. Co*., No. 20 Civ. 3311, 2020 WL 2904834 (S.D.N.Y. May 14, 2020).

Three key themes underlie both Judge Lehrburger's report and recommendation, and the other New York rulings.

First, because the term "physical" means "pertaining to real, tangible objects," the "phrase 'direct physical loss of or damage to'" property in the policy must be limited to circumstances where there is "a negative alteration in the tangible condition of property." *Michael Cetta*, 2020 WL 7321405, at *6 (citation omitted). New York courts uniformly have reached the same conclusion. *See 10012 Holdings*, 2020 WL 7360252, at *2 (dismissing case because "[n]othing in the Complaint plausibly supports an inference that COVID-19 and the resulting Civil Orders physically damaged Plaintiff's property, regardless of how the public health response to the virus may have affected business conditions for Plaintiff"); *deMoura*, 2021 WL 2021 WL 848840, at *6 (concluding that "it is clear that 'direct physical loss or damage to property' requires actual, tangible harm to the property" and dismissing COVID-19 insurance coverage claim because "Plaintiff has failed to allege that such harm occurred."); *Dressel*, 2021

WL 1091711, at *3 (concluding that "the Policy was clear and unambiguous, and required coverage only in the event of some physical harm to property, which was not present here"). Here, no particular item of property on the premises is alleged to have suffered any tangible damage, and so Judge Lehrburger, citing the ample New York authority above, was correct to recommend dismissal. 2021 WL 1034259, at *7.

Second, "[u]nder New York law, it is unambiguous that . . . 'loss of' property does not encompass 'loss of use'" of that property. *Id*. at *6. Judge Cronan offered a helpful illustration of this point: "Say, for example, a teenager broke curfew, and his parents punished him by taking away the keys to his car. The teen undoubtedly lost the ability to use the car. However, we would not say that there had been a 'direct physical loss of or damage to' the car. The teenager was precluded from driving it. But the car's physical condition remained unchanged . . . ." 2020 WL 7321405, at *6; *see also Food for Thought*, 2021 WL 860345, at *3 ("[C]ourts applying New York law have consistently concluded that loss of use of an insured's premises does not trigger Business Income coverage . . . ."); *Tappo*, 2020 WL 7867553, at *4 ("Purely economic loss due to temporary loss of use, without some sort of actual change in or physical damage to the insured property, does not suffice."); *10012 Holdings*, 2020 WL 7360252, at *2 (rejecting "loss of use" theory).

Precedent pre-dating COVID-19 further confirms that any "loss of use" theory should be rejected. In *Roundabout Theatre Co. v Continental Casualty Co*., 751 N.Y.S.2d 4, 8 (1st Dep't 2002), New York City shut down the entire block where a Broadway theater was located, and the First Department held that the phrase "direct physical loss" in the theater's policy did not encompass the mere "loss of use" of the property, in the absence of actual physical damage to the theater itself. *Id.* at 8. The holding in *Roundabout* is binding in federal court, because there is no

"persuasive evidence that the New York Court of Appeals . . . would reach a different conclusion." *See Pahuta v. Massey-Ferguson, Inc.*, 170 F.3d 125, 134 (2d Cir. 1999). Here, Judge Lehrburger correctly concluded that Sharde Harvey's argument that "lost operations or inability to use the business is sufficient . . . directly contradicts the *Roundabout Theater* conclusion that 'loss of' does not encompass 'loss of use.'" 2021 WL 1034259, at *9.

*Roundabout*'s holding is also consistent with ordinary English usage. The key insuring language here— "direct physical loss of  . . . property at the 'scheduled premises'"—describes a *physical* event where specific items of property *within* (or "*at*") the premises are lost. (ECF 39-1, Special Property Coverage Form § A.5.o.(1) (SENT00039).) In this case, if Sharde Harvey had to suspend operations because, for example, its dental chairs or tools were destroyed or stolen, there might be a "direct physical loss of . . . property at" the premises. But it would mangle the English language to say that a governmental order allegedly restricting the dental office's operations is a "direct *physical* loss of . . . property *at*" the premises.

Third, the insurance policy in this case, and the other cited cases, includes additional language confirming the two points above. Specifically, the coverage at issue would apply through a "period of restoration," which is defined as the period ending when the property at issue "should be *repaired, rebuilt or replaced* with reasonable speed and similar quality" which, as Judge Lehrburger correctly observed, "contemplate[s] physical damage to the insured premises." 2021 WL 1034259, at *7 (emphasis added; citation omitted). *See also Michael Cetta*, 2020 WL 7321405, at *6 (similar language implies that coverage is triggered only when there is "material harm that then requires a physical fix" to specific property); *deMoura*, 2021 WL 848840, at *5 (construing this language to mean that "something must first be physically damaged" for coverage to be triggered); *Visconti*, 2021 WL 609851, at *5 (concluding that the

"repair" language would be rendered "meaningless" if the mere loss of use of a premises were sufficient to trigger coverage).

The New York cases described above, and the reasoning behind them, are part of a broader national trend.  In briefing to this Court, Sentinel cited *105* cases concluding that business interruption from the COVID-19 pandemic did not constitute "direct physical loss" or "direct physical damage" to property. (ECF 38, at 8-11; ECF 40, at 2-3 n.1; ECF 44, 47, 49), and there have since been 32 more—for a total of 137. (*See* Appendix A.)

Sharde Harvey cites a relatively small number of outlier rulings (*see* ECF 51-1), all of which are outside New York, and many of which lack any reasoning (*see* ECF 51-2, ECF 51-4, ECF 51-5, ECF 51-6.) These outlier rulings rely on the "loss of use" theory that is flatly contrary to New York law. Take, for example, the two out-of-state cases that Sharde Harvey quotes at length in its objections. (ECF 51, at 24).

- In *In re Society Insurance Co. COVID-19 Business Interruption Protection Insurance Litigation*, MDL No. 2964, 2021 WL 679109, at *9 (N.D. Ill. Feb. 22, 2021), the court concluded that a claim was stated because, as a result of the COVID-19 pandemic, "the Plaintiffs **cannot use (or cannot fully use)** the physical space." *Id*. at *9 (emphasis added)

- In *Derek Scott Williams PLLC v. Cincinnati Insurance Co*., No. 20 C 2806, 2021 WL 767617 (N.D. Ill. Feb, 28 2021), the court concluded that a "reasonable factfinder could find that the term 'physical loss' is broad enough to cover . . . **a deprivation of the use** of its business premises." *Id*. at *4 (emphasis added)

These decisions cannot be squared with *Roundabout*, which is binding here. *See Sharde Harvey*, 2021 WL 1034259, at *11; *Food for Thought*, 2021 WL 860345, at *4 n.2 (both refusing to follow *Society*). [1]

Finally, Sharde Harvey's reliance on *Pepsico v .Winterthur Int'l Am. Ins. Co*., 806 N.Y.S.2d 709 (2d Dep't 2005) (cite Obj. 20-21) is misplaced. In *Pepsico*, faulty raw ingredients rendered certain Mountain Dew and Diet Pepsi soft drinks "unmerchantable and necessitated their destruction," and the question presented was whether this event fell within Pepsico's coverage for "all risks of physical loss of or damage to property" (including "personal property" such as the soft drinks). *Pepsico v. Winterthur Int'l Am. Ins. Co*., 788 N.Y.S.2d 142, 143 (2d Dep't 2004); *Pepsico v .Winterthur Int'l Am. Ins*, 6 Misc. 3d 1006(A), 2004 WL 3092342, at *1 (N.Y. Sup. Ct. Dec. 10, 2004) (earlier decisions from the same case providing the factual background and policy language).  The Second Department concluded Pepsico's loss was covered because a "physical event" occurred that "seriously impaired" the "function" of the soft drinks, so that they could not be sold.  806 N.Y.S.2d, at 711. The *Pepsico* case is unhelpful here because Sharde Harvey does not allege that its losses arose from a "physical event" that damaged or destroyed any particular property at the premises. Sharde Harvey does not allege, for example, that it business was suspended because the coronavirus caused its dental tools or dental chairs to deteriorate to the point of having to be thrown out, like the soft drinks in *Pepsico*. Sharde Harvey alleges instead that it was an *external* event—governmental "stay-at-home" orders—that

---

[1] Sharde Harvey relies on one California case that purported to apply New York law, and that concluded a salon had stated a claim for coverage because at "various points during the pandemic, [the salon] was forced to shutter, rendering its property unusable for its only purpose—the operation of a business." *Kingray Inc. v. Farmers Group Inc*., No. EDCV 20-963, 2021 WL 837622, at *7 (C.D. Cal. Mar. 4, 2021 2021) (cited Obj. 16-17). But the court in *Kingray* failed to cite or discuss *Roundabout* or the six New York cases that at the time had rejected COVID-19 insurance coverage cases. *Kingray*'s abbreviated analysis is neither consistent with New York law, nor persuasive, and the Court should not follow it.

"precluded Plaintiff from operating their Insured Property in the manner intended." (Third Am. Comp., ECF 41 ("TAC") ¶ 43; *see also*, § VI, *infra* (discussing lack of causation).)

As Judge Engelmayer explained in *Newman Myers Kreines Gross Harris, P.C. v. Great Northern Ins. Co.*, 17 F. Supp. 3d 323, 330 (S.D.N.Y. 2014), where courts have found physical damage from matters invisible to the naked eye, such as "water contamination," there was at least some "physical change for the worse" at the premises, as opposed to a "forced closure of the premises for reasons exogenous to the premises themselves," such as governmental orders. The *Pepsico* decision falls squarely in that easily distinguishable line of cases involving losses that flow from a localized, physical event, and not from external or broader factors. (*See* ECF 40, at 7-8 (distinguishing similar cases).) *See also Visconti*, 2021 WL 609851, at *5 n.2 (dismissing COVID-19 insurance claims and concluding that "*Pepsico* does not support [the plaintiff's] argument" because the coronavirus did not cause "any *physical* loss or damage to property" at the premises) (emphasis in original).

## II.   JUDGE LEHRBURGER CORRECTLY APPLIED THE BINDING DECISION IN *ROUNDABOUT*

Sharde Harvey argues that the First Department's decision in *Roundabout* is not "binding on this Court" (ECF 51, at 18), and further, that that the operative coverage language in *Roundabout* was critically different insofar as it required there to be a loss "*to*" property instead of (as here) a loss "*of*" property (*id*. at 18-19). Sharde Harvey is flatly wrong as to both points.

First, the Second Circuit has made clear that all federal courts in New York are "bound . . . to apply the law as interpreted by New York's intermediate appellate courts" unless there is "persuasive evidence that the New York Court of Appeals . . . would reach a different conclusion." *Pahuta*, 170 F.3d at 134. Sharde Harvey does not even attempt to meet this standard and, hence, *Roundabout* is binding and must be followed.

Second, the key insuring clause in *Roundabout* covered losses "of" property, just as in this case. Specifically, the insurance company agreed to cover interruption in the production of the theater's shows that was the result of "***loss of***, damage to or destruction of property" at the theater. 751 N.Y.S.2d at 5 (emphasis added).  The phrase "loss of" appears *twelve times* in the opinion, including, critically, in the First Department's rejection of the argument "that the phrase 'loss of' must include 'loss of use of.'" *Id*. at 8. Sharde Harvey's Complaint alleges that it "suffered direct loss or damage within the definitions of the Policy as ***loss of use*** of property as it was intended to be used, as here, constitutes loss or damage" (TAC ¶ 46 (emphasis added)), making clear that it is relying on exactly the theory that that the binding decision in *Roundabout* rejected.

Regardless, the difference of one preposition would not save Sharde Harvey. As one federal court in California explained, the "reliance on the difference between prepositions—'of' versus 'to'"—does not help because, on either phrasing, the concept of "direct physical loss" cannot possibly encompass "anything that interferes with the permitted physical activities on a property." *Plan Check Downtown III, LLC v. AmGuard Ins. Co*., 485 F. Supp. 3d 1225, 1231-32 (C.D. Cal. 2020).

Sharde Harvey relies on Judge Birotte's decision *Total Intermodal Services Inc. v. Travelers Property Cas*. Co., CV 17-04908, 2018 WL 3829767 (C.D. Cal. July 11, 2018) for its "of"-versus-"to" argument (cited Obj., 20), but fails to tell the Court that Judge Birotte, distinguishing his own prior ruling in *Total Intermodal*, concluded that COVID-19 business interruption does not trigger coverage under the same "direct physical loss of" property language at issue here. *Mark's Engine Company No. 28 Restaurant, LLC v. Travelers Indem. Co*., 2:20-cv-04423, 2020 WL 5938689, at *3 (C.D. Cal. Oct. 2, 2020).

### III.   JUDGE LEHRBURGER DID NOT CONFLATE "PHYSICAL LOSS" AND "PHYSICAL DAMAGE"

Sharde Harvey incorrectly argues that Judge Lehrburger "conflated 'physical loss of' with 'property damage.'" (ECF 51, at 2; *see also id.* 15-16.) In, fact Judge Lehrburger was clear that, under *Roundabout*, the two phrases have distinct meanings:

> Sharde Harvey overlooks, however, the fact that *Roundabout Theater* directly addressed the distinction between "loss of" and "damage to." In *Roundabout Theater*, the Appellate Division confronted a lower court's conclusion "that the phrase 'loss of' must include 'loss of use of,' because otherwise 'loss of' would be redundant to 'destruction of.'" *Roundabout Theatre*, 302 A.D.2d at 7, 751 N.Y.S.2d at 8. The court observed that "loss of" could encompass "theft or misplacement." *Id.*, 751 N.Y.S.2d at 8. As Judge Cronan noted in *Michael Cetta*, "loss of" could also encompass complete destruction of property, "whereas 'damage' contemplates a lesser injury." 2020 WL 7321405 at *9.

2021 WL 1034259, at *7. This analysis, which Sharde Harvey completely ignores in its objections, is exactly right. *See also*, *e.g.*, *Food for Thought*, 2021 WL 860345, at *4 (S.D.N.Y. Mar. 6, 2021) (citing *Roundabout* to reject the argument that Sentinel's "interpretation fail[s] to give the phrase 'loss of' a distinct meaning from 'physical damage'"); *DeMoura*, 2021 WL 848840, at *6 (explaining that "the phrase 'physical loss of or damage to property' in this context plainly covers two scenarios: one where 'physical loss' occurs—which naturally refers to a situation where the value of the property as a whole 'disappear[s] or 'dimin[ishes]'—and one where 'damage' occurs—that is, where the property is harmed but not destroyed'").

Further supporting the point are cases that have found the phrase "direct physical loss" to be triggered in instances where property goes missing, irrespective of whether it can be shown that the missing property is also damaged in any way. For example, in *Rokeach v. Hanover Insurance Co.*, No. 1:13-cv-5011-GHW, 2015 WL 2400097, at *3 (S.D.N.Y. May 19, 2015), the policy covered "direct physical loss of or damage to Covered Property at the premises," and the court allowed a welding business to proceed past summary judgment on a claim arising from a

series of property thefts. *Id*. at *4. *See also*, *e.g.*, *MGN Logistics, Inc. v. Travelers Property Cas. Co.*, No. 16 CV 4301, 2017 WL 3780280, at *4 (N.D. Ill. Aug. 31, 2017) (allowing coverage under a policy insuring against "direct physical loss" when copper coils went missing in transit).

Here, Sharde Harvey has not identified any particular item of property that has gone missing (*i.e.*, that was "lost") or that was damaged in any way—and hence there is no coverage.

## IV.    SHARDE HARVEY'S PREMISES WERE NOT "UNINHABITABLE" OR "UNSAFE"

Sharde Harvey argues that "the presence of the Coronavirus in the air and on surfaces makes businesses like the Plaintiff's uninhabitable, unsafe, and unfit for their normal and intended uses" (ECF 51, at 9), but that is wrong on both the facts and the law.

On the facts, any suggestion that the premises were "uninhabitable" or "unsafe" is contradicted by the Complaint which alleges that Sharde Harvey "performed emergency services for patients on an emergency as needed basis." (TAC ¶ 9.) While it may not have been safe for people to assemble in close proximity, the premises was obviously safe to enter and inhabit.

The underlying argument that there is a "direct physical loss" when property is "uninhabitable" traces back to *Port Authority v. Affiliated FM Ins. Co*., 311 F.3d 226, (3d Cir. 2002). (ECF 42, at 10 (Sharde Harvey citing *Port Authority* for the proposition "that physical loss can occur when a property is uninhabitable").) But that case does not help Sharde Harvey. In *Port Authority*, the Third Circuit, applying New York and New Jersey law, held that the "mere presence of asbestos" was not enough to show "direct physical loss or damage." 311 F.3d at 236 (citation omitted). Coverage would be triggered only if "an actual release of asbestos fibers" had "reach[ed] such a level" that the building was "uninhabitable and unusable." *Id*. Two weeks after the Third Circuit decided *Port Authority*, the First Department issued *Roundabout*, squarely rejecting recovery for "loss of use"—and hence undermined any further reliance on *Port Authority* in New York.

- 12 -

Regardless, as Judge Cronan observed, *Port Authority* only "bolsters [the] argument for dismissal" where, as here, the COVID-19 pandemic merely restricted the *operations* of a business but did not render a property completely uninhabitable.  *Michael Cetta*, 2020 WL 7321405, at *10; *see also Brian Handel D.M.D., P.C. v. Allstate Ins. Co.*, No. 20-3198, 2020 WL 6545893, at *3 (E.D. Pa. Nov. 6 2020) (dismissing COVID-19 case based on the *Port Authority* standard because "plaintiff's property remained inhabitable and usable, albeit in limited ways").

The remainder of Sharde Harvey's argument—that its business premises was "unfit for [its] normal and intended uses" (ECF 51, at 9)—is legally flawed because it boils down to precisely the "loss of use" argument that *Roundabout* and other New York courts have consistently rejected.

## V.     SHARDE HARVEY'S NEW ARGUMENT ABOUT "SIGNIFICANT" CLEANING EFFORTS IS BOTH WAIVED AND INCORRECT

Citing various studies and news articles, Sharde Harvey argues that the "measures that must be taken to remove the Coronavirus from property are significant," which supposedly means that the virus causes property damage. (ECF 51, at 9-10.) At the outset, neither these sources nor this argument were raised in the briefing on the motion to dismiss, and so should be rejected out of hand. "[N]ew arguments and factual assertions cannot properly be raised for the first time in objections to the report and recommendation, and indeed may not be deemed objections at all." *Razzoli v. Fed. Bureau of Prisons*, No. 12 Civ. 3774, 2014 WL 2440771, at *5 (S.D.N.Y. May 30, 2014).

Regardless, the Complaint concedes the simple fact that cleaning is effective against the virus, and can even "eradicate" it. For example, the Complaint alleges:

- "It is clear that contamination of the Insured Property is a direct physical loss requiring remediation to clean the surfaces of the Insured Property." (TAC ¶ 52.)

- 13 -

- "The CDC has said that the best way to prevent illness is to avoid being exposed to this virus and that steps can be taken to slow its spread:  . . . . Routinely clean and disinfect frequently touched surfaces." (*Id.* ¶ 61.)

- "[T]he requisite contact and interaction [involved in Sharde Harvey's business] causes a heightened risk of the property becoming contaminated and required constant sanitation and cleaning to avoid spread of COVID-19." (*Id.* ¶ 75.)

- "To eradicate any Coronavirus that was present in the facility, Plaintiff regularly cleaned and sanitized the dental." (*Id.* ¶ 83.)

Similarly, the Complaint concedes that he virus can survive on surfaces (*i.e.*, outside a human host) only for a matter of hours or days.  (*Id.* ¶ 53.)[2]

Whether or not the cleaning efforts are considered modest or (as Sharde Harvey now contends) "significant" does not change the fact that, under New York law "an item or structure that merely needs to be cleaned has not suffered a 'loss' which is both 'direct' and 'physical.'" *Food for Thought*, 2021 WL 860345, at *5 (citation omitted); *see also Sharde Harvey*, 2021 WL 1034259, at *9 (same); *Tappo of Buffalo*, 2020 WL 7867553, at *4 (same); *Visconti*, 2021 WL 609851 (applying New York law and concluding that "even if Covid-19 were found at Visconti's premises, it would not constitute the direct, physical loss or damage required to trigger coverage

---

[2] These concessions are consistent with published guidance from the Centers for Disease Control and Transmission that (1) that the risk of surface transmission is "generally less than 1 in 10,000"; (2) that "cleaning with soap or detergent should be enough to further reduce the relatively low transmission risk"; and (3) that "99% reduction in infectious SARS-CoV-2 and other coronaviruses can be expected under typical indoor environmental conditions within 3 days." *See, e.g.*, Centers for Disease Control and Prevention, Science Brief: SARS-CoV-2 and Surface (Fomite) Transmission for Indoor Community Environments (April 5, 2021), https://www.cdc.gov/coronavirus/2019-ncov/more/science-and-research/surface-transmission.html.

because its presence can be eliminated by routine cleaning and disinfecting"). In addition, because the coronavirus can only survive on surfaces for a limited period, any alleged physical presence would be "short-lived" and "could not constitute 'physical damage to property' under the plain language of the Policy." *Dressel*, 2021 WL 1091711, at *4.

Sharde Harvey wrongly focuses on the alleged difficulty of cleaning when the more fundamental point is that, even where "[v]irus particles may have circulated in the air within the insured premises and settled on the exposed surfaces," those particles "do not alter the characteristics of the covered property in any way except that their presence creates a health risk for humans who enter the premises." *Kim-Chee LLC*, 2021 WL 1600831, at *4. In those circumstances, the "building itself remains unharmed by the virus and would be safe for occupancy except for the arrival of people who bring new sources of infection." *Id*. Far from being "damaged" or "lost," the property at the premises remains "intact and available for use once the human occupants no longer present a health risk to one another." *Id*. at *6.

These conclusions accord with ordinary English usage. One would hardly consider property to be "damaged" or somehow "lost" if the underlying problem could be remedied with disinfectants. But property that has been tangibly altered or destroyed is, by contrast, naturally described as damaged or lost. Courts across the country have agreed with this basic point.[3]

---

[3] *See*, *e.g.*, *Unmasked Mgmt., Inc. v. Century-Nat'l Ins. Co.*, No. 3:20-cv-01129, 2021 WL 242979, at *6 (S.D. Cal. Jan. 22, 2021) (concluding that the presence of the virus "could not have 'damaged' Plaintiffs' property" because "disinfectant and other cleaning methods can be used to remove or lessen the virus from surfaces"); *Uncork and Create LLC v. Cincinnati Ins. Co.*, No. 2:20-cv-00401, 2020 WL 6436948, at *5 (S.D. W.Va. Nov. 2, 2020) ("[E]ven when present, COVID-19 does not threaten the inanimate structures covered by property insurance policies, and its presence on surfaces can be eliminated with disinfectant."); *Promotional Headwear*, 2020 WL 7078735, at *8 ("[E]ven assuming that the virus physically attached to covered property, it did not constitute the direct, physical loss or damage required to trigger coverage because its presence can be eliminated . . . [by] routine cleaning and disinfecting.").

VI.    **THE ALLEGED PHYSICAL PRESENCE OF THE VIRUS ON SITE IS IRRELEVANT**

Sharde Harvey argues that, because certain of its patients became sick, the coronavirus must have been present at its property—and hence caused physical damage. (ECF 51, at 3-4.) This is incorrect for three reasons.

First, even under the lenient standard of review for a motion to dismiss, the Court must "draw on its judicial experience and common sense" to determine if the complaint's allegations state a "plausible" claim, based on "reasonable inference[s]" from the facts. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-69 (2009). Here, Sharde Harvey's speculation that, because an unspecified number of patients became sick at an unspecified time, the virus must have been present on site (TAC ¶ 80) is exactly the sort of unreasonable inference courts have correctly refused to credit in other COVID-19 cases. *See*, *e.g.*, *Cafe Plaza De Mesilla Inc. v. Continental Cas. Co.*, No. 2:20-cv-354, 2021 WL 601880, at *6 (D.N.M. Feb. 16, 2021) (rejecting "Plaintiff's conclusory argument that the widespread existence of the virus locally necessarily makes it 'reasonable' to infer that the virus was present on the premises"); *Roy H. Johnson, DDS v. Hartford Fin. Servs. Grp., Inc.*, No. 1:20-cv-02000, 2021 WL 37573 (N.D. Ga. Jan. 4, 2021) (rejecting plaintiff's allegation that "COVID-19 must have somehow found its way into the office" as based on "conjecture and speculation"); *Promotional Headwear*, 2020 WL 7078735, *8 (reasoning that accepting "conclusory assertion" about the presence of the virus "would be to accept the proposition that any business located in a community with COVID-19 infections was likely contaminated with the virus").

Second, as discussed, the policy's references to "physical" loss or damage, and to the "period of restoration," encompass only *tangible* changes in property that would require *repair*, as opposed to mere *cleaning*.

Third, even if Sharde Harvey plausibly alleged the virus was present at its dental office and that the presence caused "physical" loss or damage, that allegation would still not suffice. The *cause* of Sharde Harvey's losses for which it seeks coverage was not localized viral presence but something else—namely, the virus outbreak, and efforts to slow its spread. The governmental orders here did not focus on localized property damage but restricted the operations of businesses, irrespective of whether any particular business had extensive viral contamination or none at all. Executive Order, 9 NYCRR 8.202.8 (Mar. 20, 2020).

The court's decision in *Schlamm Stone & Dolan, LLP v. Seneca Ins. Co.*, No. 603009/2002, 6 Misc. 3d 1037(A), 2005 WL 600021 (N.Y. Sup. Ct. Mar. 04, 2005) is instructive to this point. There, a law firm was denied business interruption coverage for the period immediately following the September 11, 2001 terrorist attacks—despite alleging that "dust and other particles" made it "difficult to remain in the offices"—because those dust particles were not the cause of its alleged losses. *Id*. at *1. All of Lower Manhattan was closed because of the attacks, not because of any particular damage at the firm's offices. *Id*. Judge Lehrburger correctly found *Schlamm Stone* instructive because there, as here, "the direct cause of [the plaintiff's] business interruption was the shutdown order, not property damage." 2021 WL 1034259, at *10.

This is yet another rationale adopted by courts across the country in denying similar COVID-19 insurance claims. For example, a federal court in Pennsylvania denied the claims of a restaurant and bar because its "losses were caused by the Shutdown Orders . . . , not some speculative, unprovable physical damage or unknown condition of the property." *Whiskey Flats, Inc. v. Axis Ins. Co.*, No. 20-3451, 2021 WL 534471, at *4 (E.D. Pa. Feb. 12, 2021). The court reached that conclusion because, as here, the plaintiff "was required to comply with the

Shutdown Orders regardless of the presence or absence of the coronavirus on its property." *Id.*

Accordingly, moving forward with "*post hoc* discovery" about whether or to what extent the

virus was present would be pointless, as it "would not change the cause of the Plaintiff's income

losses." *Id*.  Another court explained the point as follows, rejecting the claims of a restaurant

because it was not the restaurant's property that had changed but the "world around it":

> [T]he key difference between the Plaintiff's loss of use theory and something
> clearly covered—like a hurricane—is that the property did not change. The world
> around it did. And for the property to be useable again, no repair or change can be
> made to the property—the world must change. Even if a cleaning crew Lysol-ed
> every inch of the restaurant, it could still not host indoor dining at full capacity.
> Put simply, Plaintiff seeks to recover from economic losses caused by something
> physical—not physical losses. These facts are more akin to a zoning change, loss
> of liquor license, or Miami Hurricanes championship parade blocking Red
> Road—intangible business operations are affected, but the physical structure
> remains the same . . . .

*Town Kitchen LLC v. Certain Underwriters at Lloyd's, London*, No. 20-22832, 2021 WL

768273, at *5 (S.D. Fla. Feb. 26, 2021).[4] Here, too, Sharde Harvey has not pleaded that it is

seeking recovery for any "physical losses," and so Judge Lehrburger was correct to urge

dismissal.

## VII.   LABELING THE POLICY "ALL-RISK" DOES NOT ALTER THE CONTRACT TERMS

Sharde Harvey's objections are replete with references to the insurance policy as an "all-

risk" policy, and at one point Sharde Harvey states that it bought its "all risk" policy "to help it

weather any financial business income losses it might suffer in the event the dental practice was

closed or required to be closed." (ECF 51, at 1, 2, 14, 16, 18, 19, 20.) But the policy simply does

---

[4] *See also*, *e.g.*, *Circus Circus LV, LP v. AIG Specialty Ins. Co.*, No. 2:20-cv-01240, 2021 WL
769660, at *4 (D. Nev. Feb. 26, 2021) (no coverage where a casino "temporarily shut down not
because COVID-19 damaged its or its neighbors' property, but because it was ordered to do so
by the governor"); *Torgerson Properties, Inc. v. Cont'l Cas. Co.*, No. 20-2184, 2021 WL
615416, at *2 (D. Minn. Feb. 17, 2021) ("[I]t is not the presence of the virus on the premises that
closed [the plaintiff's] properties (or caused people to stop visiting those properties), but rather
the executive orders meant to slow the virus's spread.").

not say that it provides coverage for every occasion when "the dental practice was closed or required to be closed."

As Judge Lehrburger correctly found, this "all risk" argument is an "inaccurate" description of the policy because "the types of losses covered by the policy are limited by, among other things, the phrase 'direct physical loss of or damage to'" property at the premises. 2021 WL 1034259, at *12 n.13. On this point, too, courts in New York and across the country have agreed. *Dressel,* 2021 WL 1091711, at *4 (rejecting argument that "all risk" policy covers "losses caused by any fortuitous peril" because the "argument "dramatically overstates the scope of coverage" and ignores the necessary nexus to "property damage"); *Real Hospitality, LLC v. Travelers Cas. Ins. Co. of Am.*, No. 2:20-cv-00087, 2020 WL 6503405, at *5 n.9 (S.D. Miss. Nov. 4, 2020) (dismissing COVID-19 insurance claim and explaining: "One does not buy simply 'business interruption insurance.' Policyholders are not insuring against 'all risks' to their income—they are insuring against 'all risks' to their property—that is, the building and its contents."); *Emerald Coast Rests., Inc. v. Aspen Specialty Ins. Co*., No. 3:20cv5898-TKW-HTC, 2020 WL 7889061, at *1 (N.D. Fla. Dec. 18, 2020) ("[A]n 'all risk' policy is not an 'all loss' policy, and thus does not extend coverage for every conceivable loss).

## CONCLUSION

For the foregoing reasons and others appearing on the record, the Court should uphold Judge Lehrburger's report and recommendation, and should dismiss Sharde Harvey's Third Amended Complaint in its entirety with prejudice.

- 19 -

Dated:  April 29, 2021                    Respectfully submitted,

                                          STEPTOE & JOHNSON LLP

                                          By:   _/s/ Sarah D. Gordon_____

Charles Michael                                 Sarah D. Gordon*
Meghan Newcomer                                 1330 Connecticut Avenue, NW
1114 Avenue of the Americas                     Washington, D.C. 20036
New York, New York 10036                        (202) 429-3000
(212) 506-3900                                  sgordon@steptoe.com
cmichael@steptoe.com                            *admitted *pro hac vice*
mnewcomer@steptoe.com

            *Counsel for Sentinel Insurance Company, Ltd.*

**APPENDIX A**

Chart of Additional Federal Cases Concluding That Business Interruption
from the COVID-19 Pandemic, and from Associated Governmental Orders,
Does Not Constitute "Direct Physical Loss"

| No. | Date/Court | Plaintiff Type | Illustrative Quote / Citation |
|---|---|---|---|
| 1 | 4/26/21, E.D. La. | Restaurant | In this case, Muriel's does not allege any physical loss that manifested as a demonstrable physical alteration of the premises. . . . [T]he Court finds that Muriel's does not sufficiently allege direct physical loss to the covered property." Muriel's New Orleans, LLC v. State Farm Fire & Cas. Co., No. 20-2295, 2021 WL 1614812, at *7 (E.D. La. Apr. 26, 2021) |
| 2 | 4/23/21, W.D.N.Y. | Martial Arts Business | "[T]he Complaint alleges that the virus has become widespread and that governmental orders in New York State have led to business closures by sharply reducing occupancy. This claim—which can hardly be contested—falls short of the requirements of a direct physical loss or damage to the premises." Kim-Chee LLC v. Phila. Indem. Ins. Co., No. 1:20-cv-1136, 2021 WL 1600831, at *6 (W.D.N.Y. Apr. 23, 2021) |
| 3 | 4/23/21, S.D.N.Y. | Restaurant | "The Complaint alleges that COVID-19 caused a 'direct physical loss' of Plaintiffs' business premises, thus triggering the Policies' Business Income coverage. The Complaint fails to state a claim because, despite this conclusory allegation, the Complaint pleads no facts to suggest that there was a 'physical loss or accidental physical damage' to the insured property as the Policies require." Rye Ridge Corp. v. The Cincinnati Ins. Co., 20 Civ. 7132, 2021 WL 1600475, at *2 (S.D.N.Y. April 23, 2021) |

| No. | Date/Court | Plaintiff Type | Illustrative Quote / Citation |
|---|---|---|---|
| 4 | 4/20/21, E.D. Tex. | Spice & Tea Room Operator | "[T]he Court finds that 'direct physical loss' requires a distinct, structural alteration to Aggie Investments' commercial property. Aggie Investments does not allege this occurred. . . . Aggie Investments complains that government orders restricted access to its property. But loss of access, or even restricted access, is not the tangible alteration of structures that 'direct physical loss' contemplates." *Aggie Investments, LLC v. Cont'l Cas. Co.*, No. 4:21-CV-0013, 2021 WL 1550479, at *4 (E.D. Tex. Apr. 20, 2021) |
| 5 | 4/14/21, D. Md. | Vehicle Auction Facility | "[T]his Court is unpersuaded that the COVID-19 virus in some way physically altered Bel Air's covered properties or the surrounding areas in a manner that triggers coverage under the plain language of the Policy. A mere loss of use of property is not 'physical damage' within the meaning of Maryland law." *Bel Air Auto Auction, Inc. v. Great N. Ins. Co.*, No. RDB-20-2892, 2021 WL 1400891, at *12 (D. Md. Apr. 14, 2021) |
| 6 | 4/12/21, W.D. Tex. | Production Design Company | "In order to trigger coverage under a commercial property policy, 'physical loss' requires some 'distinct, demonstrable, physical alteration of the property,' not a merely economic losses." *Ilios Prod. Design, LLC v. Cincinnati Ins. Co.*, No. 1:20-CV-857-LY, 2021 WL 1381148, at *5 (W.D. Tex. Apr. 12, 2021) |
| 7 | 4/9/21, S.D. Fla. | Gym | "[T]he plain meaning of the terms 'direct physical loss of or damage to property' unambiguously requires actual, tangible damage to the physical premises itself, not merely economic losses unaccompanied by a demonstrable physical alteration to the premises itself." *PF Sunset View, LLC v. Atl. Spec. Ins. Co.*, No. 20-81224-CIV-CANNON/Brannon, 2021 WL 1341602, at *2 (S.D. Fla. Apr. 9, 2021) |

| No. | Date/Court | Plaintiff Type | Illustrative Quote / Citation |
|---|---|---|---|
| 8 | 4/9/21, C.D. Cal. | Restaurant & Nightclub | "Here, the Policy provisions on which Caribe relies clearly condition recovery on physical loss or damage to the insured premises. But Caribe alleges only that COVID-19 restrictions have prevented it from using its property for normal business operations, which does not suffice. Nowhere in the FAC does Caribe sufficiently allege direct physical loss or damage such as would trigger coverage. Therefore, just as in the cases discussed above, Caribe's failure to allege direct physical loss or damage forecloses its claim to coverage under the Policy." *Caribe Rest. & Nightclub, Inc. v. Topa Ins. Co.*, No. 2:20-cv-3570-ODW (MRWx), 2021 WL 1338439, at *3 (C.D. Cal. Apr. 9, 2021) |
| 9 | 4/8/21, E.D. Pa. | Hotel Operator | The Policy makes clear that there must be some sort of physical damage to the property that is the subject of a repair, rebuilding, or replacing. The effects of the COVID-19 pandemic on Plaintiffs do not fall within that definition, as the presence or threatened presence of the coronavirus on the property can be largely remediated by mask wearing, social distancing, and disinfecting surfaces." *SSN Hotel Mgmt., LLC v. Harford Mut. Ins. Co.*, No. 20-6228, 2021 WL 1339993, at *5 (E.D. Pa. Apr. 8, 2021) |
| 10 | 4/7/21, D. Mass. | Restaurant Operator | "The COVID-19 virus does not impact the structural integrity of property in a manner contemplated by the Policy and thus cannot constitute 'direct physical loss of or damage to' property. A virus is incapable of damaging physical structures because the virus harms human beings, not property." *Select Hosp., LLC v. Strathmore Ins. Co.*, No. CV 20-11414-NMG, 2021 WL 1293407, at *3 (D. Mass. Apr. 7, 2021) (internal citations omitted) |
| 11 | 4/2/21, S.D. Cal. | Restaurant Operator | "[T]he Court grants Defendant's motion with respect to Plaintiffs' breach of contract claim because Plaintiffs fail to allege the requisite 'distinct, demonstrable, physical alteration' to their property. *Islands Restaurants, LP v. Affiliated FM Ins. Co.*, No. 3:20-cv-02018-H-JLB, 2021 WL 1238872, at *5 (S.D. Cal. Apr. 2, 2021) |

| No. | Date/Court | Plaintiff Type | Illustrative Quote / Citation |
|---|---|---|---|
| 12 | 4/1/21, C.D. Cal. | Retail Operator | "[W]here an insurance policy conditions recovery on 'direct physical loss or damage,' economic business impairments caused by COVID-19 safety orders do not fall within the scope of coverage." *Motiv Grp., Inc. v. Cont'l Cas. Co.*, No. 2:20-cv-9368-ODW (Ex), 2021 WL 1240779, at *4 (C.D. Cal. Apr. 1, 2021) |
| 13 | 3/31/21, E.D. Pa. | Dentist | "As for 'physical loss of or damage to' property, the loss or damage must be physical; pure economic losses are intangible and do not constitute property damage. The use of the word 'physical' unambiguously means there must be tangible destruction of some part of the property." *Eric R. Shantzer, DDS v. Travelers Cas. Ins. Co. of Am.*, No. CV 20-2093, 2021 WL 1209845, at *4 (E.D. Pa. Mar. 31, 2021) |
| 14 | 3/31/21, E.D. Pa. | Medical Practice | "There was no physical loss or damage to Glat's or others' properties alleged in the amended complaint. Thus, because it has not alleged facts showing 'a direct physical loss of or damage to' its own or others' properties, Glat has not established coverage under the civil authority, business income or extra expenses provisions." *Paul Glat MD, P.C. v. Nationwide Mut. Ins. Co.*, No. CV 20-5271, 2021 WL 1210000, at *6 (E.D. Pa. Mar. 31, 2021) |
| 15 | 3/30/21, E.D. Pa. | Wine Bar & Tap Room Operator | "While there is no dispute that Plaintiffs here have been precluded from fully using the insured premises by the government closure orders, the Complaint does not allege that any physical force has rendered the premises unusable or otherwise affected the condition of the property. Thus, Plaintiffs' Complaint fails to allege a 'direct physical loss of' the insured property, and fails to trigger coverage under the Policies' Business Income and Extra Expense provisions." *Tria WS LLC v. Am. Auto. Ins. Co.*, No. 20-4159, 2021 WL 1193370, at *4 (E.D. Pa. Mar. 30, 2021) |

| No. | Date/Court | Plaintiff Type | Illustrative Quote / Citation |
|---|---|---|---|
| 16 | 3/30/21, S.D. Fla. | Eyewear Retailer | "Read in context, the textual combination of the Policy's affirmative grant of coverage—'direct physical loss to Covered Property'—unambiguously requires actual tangible damage to the physical premises itself, not merely a claim that the property as a business has suffered adverse economic consequences or impact related to use of the property." *Royal Palm Optical, Inc. v. State Farm Mut. Auto. Ins. Co.,* No. 20-80749-CIV, 2021 WL 1220750, at *5 (S.D. Fla. Mar. 30, 2021) |
| 17 | 3/30/21, E.D. Pa. | Sports Arena | "The explicit terms of the relevant policies require a 'direct physical loss' by virtue of the definitions for 'Covered Cause of Loss' and 'Loss.' Government orders in response to a virus simply do not fit this physicality requirement." *Chester Cnty. Sports Arena, et al. v. Cincinnati Spec. Underwriters Ins. Co.,* No. 20-2021, 2021 WL 1200444, at *7 (E.D. Pa. Mar. 30, 2021) |
| 18 | 3/29/21, E.D. Pa | Restaurant and Bar | "The Policy makes clear that there must be some sort of physical damage to the property that is the subject of a repair, rebuilding, or replacing. The effects of the COVID-19 pandemic on Plaintiff do not fall within that definition, as the presence or threatened presence of the coronavirus on the property can be largely remediated by mask wearing, social distancing, and disinfecting surfaces." *J.B.'s Variety Inc. v. Axis Ins. Co,* No. CV 20-4571, 2021 WL 1174917, at *4 (E.D. Pa. Mar. 29, 2021) |
| 19 | 3/26/21, C.D. Cal. | Event Planner | "Here, the Policy clearly conditions recovery on physical loss of or damage to the insured premises. Sky Flowers alleges only loss of use of the property due to the government's response to COVID-19, which does not amount to direct physical damage." *Sky Flowers, Inc. v. Hiscox Ins. Co., Inc.,* No. 2:20-cv-05411-ODW (MAAx), 2021 WL 1164473, at *3 (C.D. Cal. Mar. 26, 2021) |

| No. | Date/Court | Plaintiff Type | Illustrative Quote / Citation |
|---|---|---|---|
| 20 | 3/26/21, E.D. Wis. | Childcare Center Operator | "[Plaintiffs] must allege that COVID-19 caused a direct material, tangible, corporeal, or perceptible, loss of or damage to their covered premises. The Court finds that Plaintiffs have not sufficiently pleaded relevant facts supporting such allegations." *Paradigm Care & Enrichment Ctr., LLC v. W. Bend Mut. Ins. Co.*, No. 20-CV-720-JPS, 2021 WL 1169565, at *7 (E.D. Wis. Mar. 26, 2021) |
| 21 | 3/25/21, N.D. Cal. | Restaurant Owner | "[T]he plaintiffs do not plausibly plead a claim for coverage of their business losses and expenses because no physical loss of or damage to the restaurant caused the suspension of their business. Instead, the losses resulted from the closure orders." *Baker v. Oregon Mut. Ins. Co.*, No. 20-CV-05467-LB, 2021 WL 1145882, at *5 (N.D. Cal. Mar. 25, 2021) |
| 22 | 3/23/21, S.D. Ill. | Restaurant Operator | "The Covid-19 virus does not cause 'direct physical loss or damage to' covered property under a business income loss policy." *Zajas, Inc. v. Badger Mut. Ins. Co.*, No. 20-CV-1055-DWD, 2021 WL 1102403, at *3 (S.D. Ill. Mar. 23, 2021) |
| 23 | 3/23/21, N.D. Ohio | Bridal Shop | "Construing the allegations in the Amended Complaint in Bridal Expressions's favor, the court finds that Bridal Expressions fails to allege plausible facts to support its claim that the presence of COVID-19 and the loss of the intended use of the property constitute a 'direct physical loss of or damage to property.'" *Bridal Expressions LLC v. Owners Ins. Co.*, No. 1:20 CV 833, 2021 WL 1232399, at *6 (N.D. Ohio Mar. 23, 2021) |
| 24 | 3/22/21, E.D.N.Y. | Dentist | "[T]he court finds that Plaintiff cannot plausibly state a claim for relief based on its loss of business income as a result of the COVID-19 pandemic. Though the pandemic has been a devastating event for Plaintiff's business and many other businesses, the business interruption was not caused by a physical loss of or physical damage to property." *Jeffrey M. Dressel, D.D.S., v. Hartford Ins. Co. of the Midwest, Inc.*, No. 20-CV-2777, 2021 WL 1091711, at *5 (E.D.N.Y. Mar. 22, 2021) |

| No. | Date/Court | Plaintiff Type | Illustrative Quote / Citation |
|-----|-----------|----------------|-------------------------------|
| 25 | 3/22/21, M.D. Fla. | Restaurant Operator | "Pane Rustica has alleged only economic damage, not physical damage; consequently, its claim is not covered." *Pane Rustica, Inc. v. Greenwich Ins. Co.*, No. 8:20-cv-1783-KKM-AAS, 2021 WL 1087219, at *3 (M.D. Fla. Mar. 22, 2021) |
| 26 | 3/19/21, W.D. Mich. | Winery | "St. Julian has not alleged a tangible, physical loss or damage. The coronavirus has not physically altered any property, and St. Julian does not plausibly allege that its property became unusable. Thus, St. Julian did not suffer a 'loss' as defined by the Policy." *St. Julian Wine Co., Inc. v. Cincinnati Ins. Co.*, No. 1:20-cv-374, 2021 WL 1049875, at *3 (W.D. Mich. Mar. 19, 2021) |
| 27 | 3/19/21, N.D. Cal. | Restaurant Management Company | "Since the Policy requires physical loss or damage, and Plaintiffs' claims do not constitute physical loss or damage as a matter of law, Plaintiffs cannot state a valid claim for relief." *Out West Rest. Grp. v. Affiliated FM Ins. Co.*, No. 20-cv-06786-TSH, 2021 WL 1056627, at *4 (N.D. Cal. Mar. 19, 2021) |
| 28 | 3/18/21, W.D. Ky. | Dentist | "'[P]hysical loss' would apply to property destroyed by some force, contrasted with 'physical damage' which would cover a lesser extent of harm short of destruction or ruin. Thus, the policy would extend to the continuum of harm from total (loss) to partial (damage) resulting in alteration to an insured property. . . . Accordingly, the Court will dismiss BOHC's claims." *Bluegrass Oral Health Ctr., PLLC v. Cincinnati Ins. Co.*, No. 1:20-CV-00120-GNS, 2021 WL 1069038, at *5 (W.D. Ky. Mar. 18, 2021) |

| No. | Date/Court | Plaintiff Type | Illustrative Quote / Citation |
|-----|-----------|----------------|-------------------------------|
| 29 | 3/18/21, S.D.N.Y. | Dentist | "Under New York law, it is unambiguous that (1) 'loss of' property does not encompass 'loss of use' of that property; and (2) insurance provisions that cover business interruption 'caused by direct physical loss of or physical damage to property' provide coverage only where the insured's property suffers direct physical damage. The COVID-19 pandemic and shutdown orders may have created a 'loss of use' of property, but – as explained in greater detail below – they did not cause 'physical damage to property,' requiring dismissal here." *Sharde Harvey DDS v. Hartford Fin. Servs. Grp. Inc.*, No. 20-cv-03350, 2020 WL 1034259, at *6 (S.D.N.Y. March 18, 2021) |
| 30 | 3/18/21, W.D. Pa. | Hospital | "Here, Windber lost the use of its property because of the Orders enacted by Governor Wolf. Further, there is no allegation that Windber's property was uninhabitable. . . . [B]ecause the claimed loss is not related to the physical condition of the property, the Court finds that Windber is not entitled to coverage under the Business Income or Extra Expense provisions of the Policy." *Windber Hosp. v. Travelers Prop. Cas. Co. of Am.*, No. 3:20-cv-80, 2021 WL 1061849, at *5 (W.D. Pa. Mar. 18, 2021) |
| 31 | 3/16/21, D. Minn. | Florist | "Because Bachman's has failed to allege any structural damage to the property, or that the property has been contaminated or otherwise injured, the Court finds that the Policy does not provide coverage for the business interruption losses claimed by Bachman's when the State of Minnesota issued closure orders because of COVID-19." *Bachman's Inc. v. Florists' Mut. Ins. Co.*, No. 20-2399 (MJD/DTS), 2021 WL 981246, at *5 (D. Minn. Mar. 16, 2021) |

| No. | Date/Court | Plaintiff Type | Illustrative Quote / Citation |
|---|---|---|---|
| 32 | 3/15/21, E.D. Tex. | Restaurants | "Because COVID-19 never actually caused physical damage or loss to any of Selery's property, the claim does not come within the Business Income provision's coverage. Government measures, not any tangible damage, caused a suspension of Selery's business operations. So, the provision is inapplicable." *Selery Fulfillment, Inc. v. Colony Ins. Co.*, No. 4:20-cv-853, 2021 WL 963742, at *7 (E.D. Tex. Mar. 15, 2021) |