UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SHARDE HARVEY DDS PLLC,

                              Plaintiff,

              - against -

SENTINEL INSURANCE COMPANY LTD.,

                              Defendant.

**ORDER**

20 Civ. 3350 (PGG) (RWL)

PAUL G. GARDEPHE, U.S.D.J.:

         In this action, Plaintiff Sharde Harvey D.D.S., PLLC seeks a declaratory

judgment concerning certain provisions in an insurance policy issued by Defendant Sentinel

Insurance Company, Ltd.  (Third Am. Cmplt. (Dkt. No. 35) at 21-22)[1]  Defendant moved to

dismiss the Third Amended Complaint ("TAC"), pursuant to Fed. R. Civ. P. 12(b)(6).  (Def.

MTD (Dkt. No. 37))  This Court referred Defendant's motion to Magistrate Judge Robert

Lehrburger for a Report and Recommendation ("R&R").  (Dkt. No. 45)  Judge Lehrburger has

issued an R&R recommending that Defendant's motion to dismiss be granted.  (R&R (Dkt. No.

50) at 1)  Plaintiff has filed objections to the R&R.  (Pltf. Obj. (Dkt. No. 51))  For the reasons

stated below, Sharde Harvey's objections will be overruled, and the R&R will be adopted in its

entirety.

---

[1]  The page numbers of documents referenced in this order correspond to the page numbers
designated by this District's Electronic Case Files ("ECF") system.

## BACKGROUND

### I.    FACTS

#### A.    The Insurance Policy

Sharde Harvey is a dental practice located in New York City.  (TAC (Dkt. No. 35)

¶¶ 2, 20)  Sentinel is an insurance company headquartered in Hartford, Connecticut.  (Id. ¶ 21)

Sentinel issued an insurance policy to Sharde Harvey covering its dental offices (the "Policy"),

which was effective from December 16, 2019 to December 16, 2020.  (Id. ¶ 22; see also Policy

(Dkt. No. 39-1) at 2)[2]

The parties' dispute implicates the "Business Income," "Extra Expense," and

"Civil Authority" provisions of the Policy.

The "Business Income" provision provides that

> [Sentinel] will pay for the actual loss of Business Income [Sharde Harvey]
> sustain[s] due to the necessary suspension of [Sharde Harvey's] "operations"
> during the "period of restoration."  The suspension must be caused by direct
> physical loss of or physical damage to property at the "scheduled premises" . . .
> caused by or resulting from a Covered Cause of Loss.

(Policy (Dkt. No. 39-1) at 42, § A.5.o.(1))

---

[2]  Sharde Harvey has attached excerpts of the Policy to the TAC, and references other Policy provisions in the TAC without quoting them directly.  (See, e.g., TAC (Dkt. No. 35) ¶ 23; see also TAC, Ex. 1 (Dkt. No. 35-1))  Sentinel has submitted the full Policy.  (See Dkt. No. 39-1) Judge Lehrburger considered the full Policy in issuing the R&R (R&R (Dkt. No. 50) at 2 n.3, 6-7), and Sharde Harvey does the same in its objections.  (See Pltf. Obj. (Dkt. No. 51) at 6 n.2). Given these circumstances, this Court has considered the full Policy in resolving Defendant's motion to dismiss.  See, e.g., Svensson v. Securian Life Ins. Co., 706 F. Supp. 2d 521, 525 (S.D.N.Y. 2010) (considering full insurance policy where complaint "explicitly refers to, and relies on, the [p]olicy"); Jurupa Valley Spectrum, LLC v. Nat'l Indem. Co., No. 06 Civ. 4023 (DLC), 2007 WL 1862162, at *5-6 (S.D.N.Y. June 29, 2007) (considering amendment to reinsurance agreement where portions of agreement were attached to the complaint), aff'd, 555 F.3d 87 (2d Cir. 2009); see also Cortec Indus., Inc. v. Sum Holdings, L.P., 949 F.2d 42, 48 (2d Cir. 1991) ("Where plaintiff has actual notice of all the information in the movant's papers and has relied upon these documents in framing the complaint[,] the necessity of translating a Rule 12(b)(6) motion into one under Rule 56 is largely dissipated.").

The following definitions apply to terms used in the Business Income provision:

- "Business Income" means the "Net Profit or Loss before income taxes . . . that would have been earned . . . if no direct physical loss or physical damage had occurred; and . . . [c]ontinuing normal operating expenses incurred, including payroll" (id. at 42, § A.5.o.(4));

- "suspension" means "[t]he partial slowdown or complete cessation of [Sharde Harvey's] business activities; or . . . [t]hat part or all of the 'scheduled premises' is rendered untenantable as a result of a Covered Cause of Loss if coverage for Business Income applies to the policy" (id. at 42, § A.5.o.(5));

- "'operations'" means "[Sharde Harvey's] business activities occurring at the 'scheduled premises' and tenantability of the 'scheduled premises'" (id. at 56, § G.11.);

- "'period of restoration'" means "the period of time . . . begin[ning] with the date of direct physical loss or physical damage caused by or resulting from a Covered Cause of Loss at the 'scheduled premises', and . . . [e]nd[ing] on the date when . . . [t]he property at the 'scheduled premises' should be repaired, rebuilt or replaced with reasonable speed and similar quality; [or] [t]he date when [Sharde Harvey's] business is resumed at a new, permanent location" (id. at 56, § G.12.);

- "'scheduled premises'" means "any premises listed by location address in the Scheduled Premises section of the Declarations" (id. at 57, § G.16.); and

- "Covered Cause[] of Loss" means "RISKS OF DIRECT PHYSICAL LOSS," subject to certain exclusions and limitations. (Id. at 34, § A.3. (emphasis in original)).

"[D]irect physical loss" and "physical damage" are not defined in the Policy.

The Policy's "Extra Expense" provision provides as follows:

[Sentinel] will pay reasonable and necessary Extra Expense [Sharde Harvey] incur[s] during the "period of restoration" that [Sharde Harvey] would not have incurred if there had been no direct physical loss or physical damage to property at the "scheduled premises" . . . caused by or resulting from a Covered Cause of Loss.

(Id. at 42, § A.5.p.(1))  "Extra Expense" is defined as "expense incurred . . . [t]o avoid or

minimize the suspension of business and to continue 'operations'[;] . . . [t]o minimize the

suspension of business if [Sharde Harvey] cannot continue 'operations'[; or] . . . [t]o repair or replace any property . . . ."  (Id. at 42, § A.5.p.(3)(a)-(c))

The Policy's "Civil Authority" provision provides as follows:

> This insurance is extended to apply to the actual loss of Business Income [Sharde Harvey] sustain[s] when access to [Sharde Harvey's] "scheduled premises" is specifically prohibited by order of a civil authority as the direct result of a Covered Cause of Loss to property in the immediate area of [Sharde Harvey's] "scheduled premises".

(Id. at 43, § A.5.q.(1))

**B.    Disruption of Sharde Harvey's Business**

On March 7, 2020, due to the COVID-19 pandemic, New York Governor Andrew Cuomo declared a State of Emergency and issued a stay-at-home order.  (TAC (Dkt. No. 35) ¶ 67)  "On April 29, 2020, Governor Cuomo issued an order allowing general hospitals to resume elective surgeries and procedures," but "[d]ental offices not within hospital facilities were unable to fit the criteria."  (Id. ¶ 68)  "On June 1, 2020, Governor Cuomo loosened restrictions, allowing New York dentists to reopen," but "subject to state guidance on best practices for safety and social distancing to avoid spreading the coronavirus."  (Id. ¶ 69)

During this same time period, the Centers for Disease Control and Prevention (the "CDC") issued recommendations for reducing the spread of COVID-19, including social distancing, routinely cleaning and disinfecting touched surfaces, and using face coverings when around others.  (Id. ¶¶ 60-62)

Sharde Harvey alleges that, at some point while the Policy was in effect, some of its "patients contracted the coronavirus, confirming [the] presence of the virus at [Sharde Harvey's] property."  (Id. ¶ 80)  As a result of the presence of COVID-19 at its offices, Governor Cuomo's emergency orders, and the CDC recommendations, Sharde Harvey "ceased its regular

business operations on March 20, 2020."  (Id. ¶¶ 3, 63, 76)  Sharde Harvey continued to provide

"emergency services for patients on an emergency as needed basis, but not more than . . . once

[e]very two weeks," and "[preventative] dental care could not be and was not provided to

patients."  (Id. ¶ 9)  Because Sharde Harvey "derives most of its revenue from preventative

dental treatments," it suffered a significant loss of revenue as a result of the COVID-19

pandemic and the New York emergency orders.  (Id. ¶¶ 10, 50, 77, 82)

        C.    **The Insurance Claim**

        Sharde Harvey submitted an insurance claim to Sentinel "for a business loss

pursuant to its Policy."  (Id. ¶ 24)  "In an April 14, 2020 letter, [Sentinel] rejected [Sharde

Harvey's] claim . . . based on, inter alia, [the fact that Sharde Harvey] did not suffer physical

damage to its property directly."  (Id.)

## II.    **PROCEDURAL HISTORY**

        The Complaint was filed on April 29, 2020.  (Cmplt. (Dkt. No. 1))  Sharde

Harvey has amended three times, twice in response to proposed motions to dismiss.  The

operative complaint is the TAC, which was filed on September 18, 2020.  (See Dkt. Nos. 14, 17,

19, 21, 26-27, 29; TAC (Dkt. No. 35))  Defendant Sentinel moved to dismiss the TAC on

December 7, 2020.  (Dkt. No. 37)

        On December 17, 2020, this Court referred Defendant's motion to dismiss to

Magistrate Judge Lehrburger for an R&R.  (Dkt. No. 45)  On March 18, 2021, Judge Lehrburger

issued an R&R recommending that the TAC be dismissed.  (R&R (Dkt. No. 50) at 1)  On April

1, 2021, Plaintiff submitted objections to the R&R.  (Pltf. Obj. (Dkt. No. 51))

III.    **THIRD AMENDED COMPLAINT**

The TAC does not cite any specific provisions of the Policy that were allegedly triggered as a result of the COVID-19 pandemic or Governor Cuomo's emergency orders. Sharde Harvey instead alleges that the Policy "provides coverage for all non-excluded business losses, including Business Income that would have otherwise been earned, and thus provides coverage here." (TAC (Dkt. No. 35) ¶ 7) According to Plaintiff, the Policy provides "coverage for actual loss of business income [Sharde Harvey] sustain[s], along with any actual, necessary and reasonable extra expenses incurred, when access to [Sharde Harvey's] [p]roperty is specifically prohibited by order of civil authority." (Id. ¶ 29)

In the TAC, Plaintiff seeks a declaration stating the following:

(1)    the New York "Civil Authority Orders constitute a prohibition of access to [Sharde Harvey's] [i]nsured [p]roperty";

(2)    "the prohibition of access by the Civil Authority Orders specifically prohibited access as defined in the Policy";

(3)    "the Civil Authority Orders trigger coverage under the Policy";

(4)    "the Policy provides coverage to [Sharde Harvey] for any current and future closures in New York due to physical loss or damage directly or indirectly from the Coronavirus and/or pandemic circumstance under the Civil Authority coverage parameters";

(5)    "[Sentinel's] denial of coverage for losses sustained that were caused by the entry of the Civil Authority Orders referenced, and [Sharde Harvey's] adherence to the Civil Authority Orders, violates public policy";

(6)    "under the circumstances of this [p]andemic and the Civil Authority Orders referenced, [Sharde Harvey] had no choice but to comply with the Civil Authority Orders, and . . . [Sharde Harvey's] compliance resulted in [it] suffering business losses, business interruption and extended expenses which is therefore a covered expense";

(7)    "the Policy provides coverage to [Sharde Harvey] for any current, future and continued closures of non-essential businesses due to physical loss or damage directly or indirectly from the Coronavirus"; and

6

(8)     "the Policy provides business income coverage in the event that
         Coronavirus has directly or indirectly caused a loss or damage at [Sharde
         Harvey's] [i]nsured [p]roperty or the immediate area of [Sharde Harvey's]
         [i]nsured [p]roperty."

(Id. at 21-22)

        In moving to dismiss the TAC, Sentinel contends that Sharde Harvey's losses are

– as a matter of law – not covered under the Policy.  (Def. MTD (Dkt. No. 37); Def. MTD Br.

(Dkt. No. 38) at 7-8)  Sentinel argues that the TAC does not allege facts showing that Sharde

Harvey sustained a "direct physical loss of" or "physical damage to" its offices, and that

accordingly Sharde Harvey cannot claim coverage under the Policy's "Business Income," "Extra

Expense," or "Civil Authority" provisions.  (Def. MTD Br. (Dkt. No. 38) at 7-8, 13, 25)

## IV.   THE MAGISTRATE JUDGE'S R&R

        On March 18, 2021, Judge Lehrburger issued a thorough 36-page R&R

recommending that Defendant's motion to dismiss be granted.  (R&R (Dkt. No. 50))

        Judge Lehrburger finds that "[t]his dispute centers on the interpretation of . . .

three provisions [of the Policy]":  the "Business Income" provision; the "Extra Expense"

provision; and the "Civil Authority" provision.  (Id. at 9)

        As to the Business Income provision, Judge Lehrburger notes that "[a]t least

seven New York courts . . . have interpreted identical or materially identical Business Income

provisions in COVID-19 cases," and all of those courts "found that plaintiffs' losses were not

covered by the Business Income provision[s] and granted motions to dismiss."  (Id. at 10-11)

"The reason for that consistent outcome is clear":  under New York law – as articulated in

Roundabout Theater Co. v. Continental Casualty Co., 302 A.D.2d 1 (1st Dep't 2002) – "it is

unambiguous that (1) 'loss of' property does not encompass 'loss of use' of that property; and

(2) insurance provisions that cover business interruption 'caused by direct physical loss of or

physical damage to property' provide coverage 'only where the insured's property suffers direct physical damage.'"  (Id. at 12-13 (quoting Food for Thought Caterers Corp. v. Sentinel Ins. Co., Ltd., 524 F. Supp. 3d 242, 247 (S.D.N.Y. 2021)))  Because "the COVID-19 pandemic, as a general matter, did not 'physically damage' Sharde Harvey's property," Judge Lehrburger concludes that "Sharde Harvey is not entitled to coverage under the Business Income provision" of the Policy.  (Id. at 17, 26)

Judge Lehrburger goes on to find that the Extra Expense provision – like the Business Income provision – is triggered only where Sharde Harvey suffers "a 'direct physical loss or physical damage to property' at Sharde Harvey's premises."  Accordingly, Sharde Harvey "is not entitled to coverage under the Extra Expense provision."  (Id. at 26 (quoting Policy (Dkt. No. 39-1) at 42, ¶ A.5.p.(1))

As to the Civil Authority provision, Judge Lehrburger notes that "[n]early all of the New York COVID-19 cases" construing Business Income provisions "also addressed Civil Authority provisions; they involved the exact same New York shutdown orders at issue here; and all of them found that the plaintiffs were not entitled to coverage."  (Id. at 27)  Citing those cases, Judge Lehrburger concludes that "Sharde Harvey cannot plausibly plead that [Governor Cuomo's] shutdown orders (1) prohibited 'access to' its premises; or (2) were 'the direct result of a risk of direct physical loss to property in the immediate area,'" as is necessary to trigger the Civil Authority provision of the Policy.  (Id. at 27-28)

"As to the first element, the government shutdown orders limited access to Sharde Harvey's premises, but did not prohibit it."  (Id. at 28)

As to the second element, "the shutdown orders were the result of the COVID-19 pandemic, and . . . under New York law, COVID-19 and the COVID-19 pandemic do not

constitute a 'direct physical loss' to property." (Id. at 30)  Moreover, even if the COVID-19

virus did cause a risk of direct physical loss to property, "Sharde Harvey has not alleged with any

specificity that the government shutdown orders were the result of such a risk 'to property in the

immediate area.'" (Id.)  Judge Lehrburger concludes that "Sharde Harvey is not entitled to

coverage under the Civil Authority provision" of the Policy.  (Id. at 33)

    After construing the three Policy provisions implicated by the TAC's allegations,

Judge Lehrburger addresses the declaratory relief Sharde Harvey seeks.  Reiterating much of the

analysis described above, Judge Lehrburger concludes that all of the declaratory relief Plaintiff

seeks should be denied.  (See id. at 34-35)

    Finally, Judge Lehrburger recommends that dismissal be with prejudice, because

(1) "Sharde Harvey has not requested to leave to amend"; and (2) "amendment would be futile."

(Id. at 35)

## V. PLAINTIFF'S OBJECTIONS

    Sharde Harvey filed objections to the R&R on April 1. 2021.  (See Pltf. Obj. (Dkt.

No. 51))

    Plaintiff contends that Judge Lehrburger improperly relied on Roundabout

Theatre in issuing the R&R, because that case involves "a 'perils included' policy while the

[P]olicy here is an 'all-risk' policy." (Id. at 5; see also id. at 22 (arguing that Newman Meyers

Kreines Gross Harris, P.C. v. Great Northern Ins. Co., 17 F. Supp. 3d 323 (S.D.N.Y. 2014), is

likewise not on point, because that case involves "a 'covered perils' commercial insurance

policy, and not an 'All-Risk' policy as here"))

    Plaintiff further contends that Judge Lehrburger ignored several "cases decided

under New York law . . . hold[ing] that . . . 'property damage' was not required to have occurred

for the [p]laintiff to have stated a claim [under an 'all risk' policy]." (<u>Id.</u> at 5-6 (citing <u>King Ray</u> <u>v. Farmers Grp., Inc.</u>, 523 F. Supp. 3d 1163 (C.D. Cal. 2021); <u>Pepsico, Inc. v. Winterthur Int'l</u> <u>Am. Ins. Co.</u>, 24 A.D.3d 743 (2d Dep't 2005)))

        Sharde Harvey also complains that Judge Lehrburger "conflated 'physical loss of' with 'property damage,' thereby [requiring Sharde Harvey] to show it suffered property damage in the form of an alteration to its property in order to qualify for coverage, although nowhere in the [P]olicy is there language requiring alteration to meet the definition of damage." (<u>Id.</u> at 6)

        Plaintiff also contends that Judge Lehrburger "characterized the well-pleaded facts in his own manner to support his conclusion that the [TAC] does not state a claim for relief," and that he thereby "disputed the facts pleaded." (<u>Id.</u> at 7)  According to Plaintiff, even if property damage is required to trigger coverage under the Policy, the TAC pleads such property damage – "<u>i.e.</u>, the presence of the Coronavirus in [Sharde Harvey's] premises necessitating sanitation and cleaning and other remedial efforts." (<u>Id.</u> at 12)

## VI.    <u>THE SECOND CIRCUIT'S DECISION IN *10012 HOLDINGS*</u>

        At the time the R&R was issued, a case involving an insurance policy identical to that at issue here was pending before the Second Circuit.  See <u>10012 Holdings, Inc. v. Hartford</u> <u>Fire Ins. Co. et al.</u>, 20 Civ. 4471 (LGS), Notice of Appeal, Dkt. No. 36 (S.D.N.Y. Jan. 14, 2021); <u>see</u> <u>also</u> <u>10012 Holdings, Inc. v. Sentinel Ins. Co., Ltd.</u>, 507 F. Supp. 3d 482, 485 (S.D.N.Y. 2020) (describing the "Business Income," "Extra Expense," and "Civil Authority" provisions under the Sentinel policy at issue, as well as plaintiff's insurance claims resulting from the COVID-19 pandemic).

        On December 27, 2021, the Second Circuit issued its decision in <u>10012 Holdings,</u> <u>Inc. v. Sentinel Ins. Co., Ltd.</u>, 21 F.4th 216 (2d Cir. 2021).  In that case, the Second Circuit

considered whether an art gallery could recover lost income resulting from the COVID-19 pandemic and Governor Cuomo's emergency orders under an insurance policy issued by Sentinel containing the same "Business Income," "Extra Expense," and "Civil Authority" provisions at issue here.  See id. at 219-20.  Relying on many of the same New York authorities cited by Judge Lehrburger in the R&R, the Second Circuit affirmed the district court's decision dismissing the art gallery's claims.  Id. at 219.

As relevant here, the Second Circuit held that,

> in accord with Roundabout Theatre and every New York state court to have decided the issue, . . . under New York law the terms "direct physical loss" and "physical damage" in the Business Income and Extra Expense provisions do not extend to mere loss of use of a premises, where there has been no physical damage to such premises; those terms instead require actual physical loss of or damage to the insured's property.

Id. at 222.

The Second Circuit also held that the plaintiff art gallery could not recover from Sentinel under the "Civil Authority" provision.  As an initial matter, Governor Cuomo's "executive orders were the result of the COVID-19 pandemic and the harm it posed to human beings, not . . . [the result of the] risk of physical damage to property" as the Civil Authority provision requires.  Id. at 223.  And "even assuming that COVID-19 itself posed a 'risk of direct physical loss,' coverage under the Civil Authority provision contemplates that the executive orders prohibiting access to the insured's premises were prompted by risk of harm to neighboring premises," and the plaintiff had not alleged such facts.  Id.

**DISCUSSION**

I.      **LEGAL STANDARDS**

  A.  **Review of a Report and Recommendation**

    A district court reviewing a magistrate judge's report and recommendation "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."  28 U.S.C. § 636(b)(1)(C).  When a timely objection has been made to a magistrate judge's recommendation, the district court judge "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made."  Id.  However, "[o]bjections that are 'merely perfunctory responses argued in an attempt to engage the district court in a rehashing of the same arguments set forth in the original [papers] will not suffice to invoke de novo review.'"  Phillips v. Reed Grp., Ltd., 955 F. Supp. 2d 201, 211 (S.D.N.Y. 2013) (quoting Vega v. Artuz, No. 97 Civ. 3775 (LTS) (JCF), 2002 WL 31174466, at *1 (S.D.N.Y. Sept. 30, 2002)) (alteration in Phillips).  "To the extent . . . that the party . . . simply reiterates the original arguments, [courts] will review the Report strictly for clear error."  Indymac Bank, F.S.B. v. Nat'l Settlement Agency, Inc., 07 Civ. 6865 (LTS) (GWG), 2008 WL 4810043, at *1 (S.D.N.Y. Nov. 3, 2008) (citing Pearson-Fraser v. Bell Atl., No. 01 Civ. 2343 (WK), 2003 WL 43367, at *1 (S.D.N.Y. Jan. 6, 2003); Camardo v. Gen. Motors Hourly-Rate Employees Pension Plan, 806 F. Supp. 380, 382 (W.D.N.Y.1992)); see also Ortiz v. Barkley, 558 F. Supp. 2d 444, 451 (S.D.N.Y. 2008) ("Reviewing courts should review a report and recommendation for clear error where objections are merely perfunctory responses, . . . rehashing . . . the same arguments set forth in the original petition." (citation and quotation marks omitted)).

For portions of the R&R to which no timely objection is made, this Court's review is limited to a consideration of whether there is any "'clear error on the face of the record'" that precludes acceptance of the recommendations.  Wingate v. Bloomberg, No. 11-CV-188 (JPO), 2011 WL 5106009, at *1 (S.D.N.Y. Oct. 27, 2011) (quoting Fed. R. Civ. P. 72(b) advisory committee note; citing Nelson v. Smith, 618 F. Supp. 1186, 1189 (S.D.N.Y. 1985)).

## B.    Rule 12(b)(6) Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "In considering a motion to dismiss[,] . . . the court is to accept as true all facts alleged in the complaint," and must "draw all reasonable inferences in favor of the plaintiff."  Kassner v. 2nd Ave. Delicatessen Inc., 496 F.3d 229, 237 (2d Cir. 2007).  A complaint is inadequately pled "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement,'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 557), and does not provide factual allegations sufficient "to give the defendant fair notice of what the claim is and the grounds upon which it rests."  Port Dock & Stone Corp. v. Oldcastle Northeast Inc., 507 F.3d 117, 121 (2d Cir. 2007) (citing Twombly, 550 U.S. at 555).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice [to establish entitlement to relief]."  Iqbal, 556 U.S. at 678.

In resolving a motion to dismiss, a court may "consider . . . the complaint and any documents attached thereto or incorporated by reference and documents upon which the complaint relies heavily."  Bldg. Indus. Elec. Contractors Ass'n v. City of N.Y., 678 F.3d 184, 187 (2d Cir. 2012) (citation and quotation marks omitted).  "Where . . . the allegations pled in the complaint are contradicted by documents on which the complaint relies, the reviewing

13

court need not accept as true an allegation pled nor draw inferences in its favor." Alexander v. Bd. of Educ. of City Sch. Dist. of City of New York, 107 F. Supp. 3d 323, 331 (S.D.N.Y. 2015), aff'd sub nom. Alexander v. The Bd. of Educ. of City of New York, 648 F. App'x 118 (2d Cir. 2016) (citation and quotation marks omitted).

> ### C. Leave to Amend

Under the Federal Rules of Civil Procedure, leave to amend should be "freely give[n] . . . when justice so requires." Fed. R. Civ. P. 15(a)(2). District courts "ha[ve] broad discretion in determining whether to grant leave to amend." Gurary v. Winehouse, 235 F.3d 792, 801 (2d Cir. 2000). "Where the possibility exists that [a] defect can be cured, leave to amend . . . should normally be granted" at least once. Wright v. Ernst & Young LLP, No. 97 CIV. 2189 (SAS), 1997 WL 563782, at *3 (S.D.N.Y. Sept. 10, 1997), aff'd, 152 F.3d 169 (2d Cir. 1998).

Leave to amend may properly be denied, however, in cases of "'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.'" Ruotolo v. City of New York, 514 F.3d 184, 191 (2d Cir. 2008) (quoting Foman v. Davis, 371 U.S. 178, 182 (1962)); see Murdaugh v. City of N.Y., No. 10 Civ. 7218 (HB), 2011 WL 1991450, at *2 (S.D.N.Y. May 19, 2011) ("Although under Rule 15(a) of the Federal Rules of Civil Procedure leave to amend complaints should be 'freely given,' leave to amend need not be granted where the proposed amendment is futile." (citations omitted)).

> ### D. New York Insurance and Contract Law

"Under New York law, 'an insurance contract is interpreted to give effect to the intent of the parties as expressed in the clear language of the contract.'" Morgan Stanley Grp.

Inc. v. New Eng. Ins. Co., 225 F.3d 270, 275 (2d Cir. 2000) (quoting Vill. of Sylvan Beach v. Travelers Indem. Co., 55 F.3d 114, 115 (2d Cir. 1995)).[3]  "The initial interpretation of a contract is a matter of law for the court to decide."  Id. (citation and quotation marks omitted).  "If the language of [an insurance] policy is doubtful or uncertain in its meaning, any ambiguity must be resolved in favor of the insured and against the insurer."  Westview Assocs. v. Guaranty Nat'l Ins. Co., 95 N.Y.2d 334, 340 (2000).  But "[w]here the provisions of [a] policy are clear and unambiguous, they must be given their plain and ordinary meaning, and courts should refrain from rewriting the agreement."  U.S. Fid. & Guar. Co. v. Annunziata, 67 N.Y.2d 229, 232 (1986) (citations and quotation marks omitted).

Where the New York Court of Appeals has not addressed a particular legal issue, this Court is "bound . . . to apply the law as interpreted by New York's intermediate appellate courts . . . unless [it] find[s] persuasive that the New York Court of Appeals . . . would reach a different conclusion."  Pahuta v. Massey-Ferguson, Inc., 170 F.3d 125, 134 (2d Cir. 1999). Where the Second Circuit has interpreted New York law as pronounced by New York's intermediate appellate courts, however, this Court is bound by Second Circuit precedent until the New York Court of Appeals reaches a contrary conclusion.  See Adebiyi v. Yankee Fiber Control, Inc., 705 F. Supp. 2d 287, 291 n.4 (S.D.N.Y. 2010) (collecting cases).

---

[3]  Judge Lehrburger properly applied New York law.  (See R&R (Dkt. No. 50) at 7-8)  "A federal court sitting in diversity applies the choice-of-law rules of the forum state."  Maryland Cas. Co. v. Continental Cas. Co., 332 F.3d 145, 151 (2d Cir. 2003).  New York applies the "center of gravity" approach to contract disputes, requiring courts to "apply the law of the place which has the most significant contacts with the matter in dispute."  Id. (internal quotation marks omitted). Because Sharde Harvey is a New York-based entity and the Policy insures property located in New York, New York has the most significant contacts to the matters in dispute.  See Feldman Law Grp. P.C. v. Liberty Mut. Ins. Co., 819 F. Supp. 2d 247, 255-56 (S.D.N.Y. 2011) (explaining that, under New York law, "[i]n the insurance context, courts typically apply the law of the state which the parties understood was to be the principal location of the insured risk" (citation and quotation marks omitted)).

II.     <u>**ANALYSIS**</u>

A.     <u>**Standard of Review for Plaintiff's Objections**</u>

In its objections, Plaintiff largely repeats arguments it made before Judge Lehrburger:  that (1) this case is distinguishable from <u>Roundabout Theatre</u> and <u>Newman Myers</u> because the Policy differs from the policies at issue in those cases; and (2) "physical loss of" property is distinct from "physical damage to" property under New York law.  (<u>Compare</u> Pltf. Obj. (Dkt. No. 51) at 5-6 <u>with</u> Pltf. MTD Opp. Br. (Dkt. No. 42) at 17 n.7 (attempting to distinguish <u>Roundabout Theatre</u> and <u>Newman Myers</u>); <u>id.</u> at 18 (arguing that "'physical loss of' is clearly an additional, and different, basis for coverage beyond 'damage to' property"))

Plaintiff has identified cases that it contends Judge Lehrburger overlooked, however, and it also argues that Judge Lehrburger made improper factual determinations.  (<u>See</u> Pltf. Obj. (Dkt. No. 51) at 5-6, 11-12)  The Court considers these latter arguments <u>de novo</u>.

B.     <u>**Interpretation of the Policy**</u>

The parties agree that three provisions of the Policy are relevant to this dispute: the "Business Income," "Extra Expense," and "Civil Authority" provisions.  (<u>See</u> Def. MTD Br. (Dkt. No. 38) at 10; Pltf. Obj. (Dkt. No. 51) at 15-16)  This Court considers below Plaintiff's objections as they relate to Judge Lehrburger's interpretation of these Policy provisions.

1.     <u>**The Business Income Provision**</u>

In connection with the Policy's Business Income provision, Plaintiff complains that Judge Lehrburger improperly (1) relies on <u>Roundabout Theatre</u>, <u>Newman Meyers</u>, and their progeny while ignoring a line of contrary New York authority; (2) conflates "direct physical loss of" property with "physical damage to" property; and (3) resolves factual disputes in Sentinel's favor – namely, whether COVID-19 caused physical damage to Sharde Harvey's offices.  (Pltf.

Obj. (Dkt. No. 51) at 5-7)  The Second Circuit's decision in 10012 Holdings squarely forecloses each of Sharde Harvey's objections.

As to Judge Lehrburger's reliance on Roundabout Theatre and its progeny, 10012 Holdings expressly adopts the reasoning of Roundabout Theatre in interpreting the phrase "direct physical loss" in policy provisions identical to those in the Policy.  See 10012 Holdings, 21 F.4th at 220.  Insofar as Sharde Harvey claims that the "perils included" policy at issue in Roundabout Theatre is distinguishable from the "all risks" Policy at issue here, the Second Circuit has explicitly rejected that argument.  See id. ("The relevant provisions at issue in Roundabout Theatre and the provisions at issue in the Policy before us are not materially different.").  And while Plaintiff cites of out-of-Circuit authorities that it argues are inconsistent with Roundabout Theatre, this Court must follow the Second Circuit's interpretation of New York law.  See Adebiyi, 705 F. Supp. 2d at 291 n.4; see also 10012 Holdings, 21 F.4th at 221 ("[C]ourts in jurisdictions outside New York may have reached a different conclusion, but all New York courts applying New York law have soundly rejected the argument that business closures due to New York Executive Orders constitute physical loss or damage to property." (internal quotation marks, alterations, and citation omitted)).[4]

10012 Holdings also forecloses Plaintiff's argument that Judge Lehrburger improperly conflates "direct physical loss of" property with "physical damage to" property.  In 10012 Holdings, the Second Circuit cites with approval several decisions in which courts in this Circuit reject Plaintiff's interpretation of the phrase "direct physical loss," including Judge

---

[4]  Plaintiff contends that Judge Lehrburger's interpretation of the Policy conflicts with Pepsico v. Winterthur Int'l Am. Ins. Co., 24 A.D.3d 743 (2d Dep't 2005).  (See Pltf. Obj. (Dkt. No. 51) at 5-6)  But the Second Circuit expressly addressed Pepsico in 10012 Holdings and held that that case is entirely consistent with Roundabout Theatre.  See 10012 Holdings, 21 F.4th at 222.

Lehrburger's R&R.  See id. at 221 (citing, inter alia, Judge Lehrburger's R&R).  Moreover,

10012 Holdings construes a Sentinel policy that is identical to the Policy in this case, and this

Court is obligated to follow the Second Circuit's interpretation of identical contractual provisions

under New York law.

        Finally, 10012 Holdings' reasoning refutes Sharde Harvey's claim that Judge

Lehrburger improperly resolved certain factual disputes – namely, whether the COVID-19 virus

caused physical damage to Sharde Harvey's offices.  Sharde Harvey argues that the TAC

expressly alleges that it suffered "property damage," and that that allegation suffices to defeat a

motion to dismiss.  (Pltf. Obj. (Dkt. No. 51) at 11-12; see also TAC (Dkt. No. 35) ¶ 80

("Plaintiff's patients contracted the coronavirus, confirming presence of the virus at Plaintiff's

property and property damage."))  But Judge Lehrburger correctly refused to credit Sharde

Harvey's conclusory assertions that it suffered "property damage" as a result of the presence of

the COVID-19 virus in its offices, because that assertion does not plausibly allege "property

damage."  As the Second Circuit states in 10012 Holdings, Governor Cuomo's shutdown orders

"were the result of the COVID-19 pandemic and the harm it posed to human beings, not . . . risk

of physical damage to property."  21 F.4th at 223.  Like the art gallery plaintiff in that case,

Sharde Harvey "alleges only that it lost access to its property as a result of COVID-19 and the

governmental shutdown orders, and not that it suspended operations because of physical damage

to its property."  Id.  In short, the Second Circuit rejected the notion that the COVID-19 virus –

standing alone – could cause "physical damage" to property.  Accord St. George Hotel Assocs.,

LLC v. Affiliated FM Ins. Co., 20-CV-05097 (DG) (RLM), 2021 WL 5999679, at *7 (E.D.N.Y.

Dec. 20, 2021) ("This Court agrees with the great weight of authority concluding that the

presence of Covid-19 does not actually 'damage' insured property." (collecting cases)); Park

Ave. Oral & Facial Surgery, P.C. v. Hartford Fin. Serv. Grp., 20-CV-5407 (VSB), 2021 WL

5988342, at \*5 (S.D.N.Y. Dec. 17, 2021) ("COVID-19 virus particles do not cause 'direct

physical loss of or physical damage' within the meaning of the Policy."); Spirit Realty Capital,

Inc. v. Westport Ins. Co., 21-CV-2261 (JMF), 2021 WL 4926016, at \*3 (S.D.N.Y. Oct. 21, 2021)

("[T]he overwhelming weight of precedent, both from lower New York courts and district courts

in this Circuit, holds that COVID-19 does not qualify as 'physical loss or damage.'" (collecting

cases)); Jeffrey M. Dressel, D.D.S., P.C. v. Hartford Ins. Co. of the Midwest, Inc., 20-CV-2777

(KAM) (VMS), 2021 WL 1091711, at \*4 (E.D.N.Y. Mar. 22, 2021) ("Though the virus has the

potential to cause significant harm to people, the court is not aware of any scenario in which its

presence can cause 'physical damage' to property such as a building, or other inanimate

objects.").

        Judge Lehrburger did not improperly resolve any factual disputes in Sentinel's

favor.  He instead found, as a matter of law, that the mere presence of the COVID-19 virus does

not cause "physical damage" within the meaning of the Policy.  That finding is fully consistent

with the case law in this Circuit.

### 2.     The Extra Expense Provision

        Like the Business Income provision, the Policy's Extra Expense provision is only

triggered if Sharde Harvey suffers a "direct physical loss or physical damage to property."  (See

Policy (Dkt. No. 39-1) at 42, § A.5.p.(1))  Sharde Harvey has not distinguished the Extra

Expense provision from the Business Income provision, and the Second Circuit analyzed these

two provisions together in 10012 Holdings.  See 10012 Holdings, 21 F.4th at 220-23.

Accordingly, the above analysis applies with equal force to the Extra Expense provision, and this

Court finds no error in Judge Lehrburger's determination.

3. __The Civil Authority Provision__

Sharde Harvey has not objected to Judge Lehrburger's analysis of the Policy's Civil Authority provision, and this Court finds no error in that analysis.

Judge Lehrburger's reasoning was later adopted by the Second Circuit in analyzing an identical insurance provision in light of the same emergency orders: (1) Governor Cuomo's emergency orders were prompted by the danger the COVID-19 virus posed to human beings, not to property; and (2) the emergency orders were not prompted by the presence of COVID-19 at neighboring premises. Compare 10012 Holdings, 21 F.4th at 223 with R&R (Dkt. No. 50) at 30-31. And while Judge Lehrburger also concludes that "Sharde Harvey cannot plausibly plead that the shutdown orders . . . prohibited 'access to' its premises" (R&R (Dkt. No. 51) at 28-30), this Court sees no error in that analysis. As Judge Lehrburger notes, merely limiting access to property is distinct from "specifically prohibit[ing]" access to property, as is required to trigger the Civil Authority provision. (See id. at 28; Policy (Dkt. No. 39-1) at 43, § A.5.q.(1)). The TAC does not allege that Governor Cuomo's emergency orders prohibited Sharde Harvey from accessing its offices; to the contrary, the TAC acknowledges that Sharde Harvey was able to access its offices to perform emergency dental services. (See TAC (Dkt. No. 35) ¶ 9 ("Because of the shutdown, [Sharde Harvey] only performed emergency services for patients on an emergency as needed basis, but not more than once a week or once [e]very two weeks."))

In sum, Judge Lehrburger correctly concludes that Sharde Harvey has failed to plead that any emergency order "specifically prohibited" access to its offices. See, e.g., Food for Thought Caterers Corp. v. Sentinel Ins. Co., Ltd., 524 F. Supp. 3d 242, 250 (S.D.N.Y. 2021) ("The Policy provides for coverage if the civil authority denies all access to the insured property,

20

not simply its full use. . . . Therefore, because no civil authority order denied complete access to the plaintiff's premises, the Amended Complaint fails to allege that access was 'specifically prohibited.'").

      **C.**      **Declaratory Relief and Leave to Amend**

      Sharde Harvey does not object to Judge Lehrburger's analysis of the declaratory relief that it seeks or his recommendation that Sharde Harvey be denied leave to amend. This Court finds no error in those portions of the R&R.

      As to the requested declaratory relief, it is tied to the interpretation of the Policy provisions discussed above. Having concluded that Judge Lehrburger's interpretation of the relevant Policy provisions is correct, this Court likewise accepts his recommendation that declaratory relief be denied.

      The only declaratory relief that arguably stands apart from an interpretation of the relevant Policy provisions is Sharde Harvey's request for a declaration that "[Sentinel's] denial of coverage . . . violates public policy." (TAC (Dkt. No. 35) at 22) But as Judge Lehrburger finds, "Sharde Harvey makes no argument at all, let alone a persuasive one, as to why Sentinel's denial violates public policy – Sharde Harvey's opposition brief simply does not address it." (R&R (Dkt. No. 50) at 35) The same is true of Sharde Harvey's briefing in support of its objections, which makes no mention of this argument. In short, Sentinel's denial of Sharde Harvey's claim does not violate public policy, because "Sentinel was merely following the terms of the [P]olicy." (Id.)

      Finally, Judge Lehrburger recommends that dismissal be without leave to amend. This Court finds no error in that recommendation.

As an initial matter, Sentinel has not sought leave to amend.  Even if it had, any amendment would be futile.  Plaintiff has amended on three prior occasions and has not succeeded in articulating any cognizable "physical loss of or physical damage to" its property. See 10012 Holdings, 21 F.4th at 219-20 (affirming district court's decision to deny leave to amend "for the simple reason that 'the Policy does not provide coverage for the loss Plaintiff suffered'").

## CONCLUSION

For the reasons stated above, the R&R is adopted in its entirety.  The Clerk of Court is directed to terminate the motion (Dkt. No. 37) and to close the case.

Dated:  New York, New York
        February 24, 2022

SO ORDERED.

Paul G. Gardephe
United States District Judge

22